IN THE

# SUPREME COURT

OF

# OREGON.

Submitted on 'briefs May 7, reversed and remanded July 24, rehearing denied October 16, 1917.

## BAILLIE v. COLUMBIA GOLD MINING CO.*

(166 Pac. 965; 167 Pac. 1167.)

Equity—Pleading—Multifariousness.

1. A bill by a minority stockholder against a corporation and the holders of the majority stock, alleging a series of frauds committed by the defendants through °control of the corporation, and praying for an injunction and money judgment, is not multifarious.

Corporations — Minority Stockholder — Mismanagement — Right of Action.

2. The injury sustained by a minority stockholder in a mining company through improper manipulation of its funds by the controlling stockholder was consequential, and the right of action to recover the moneys taken was primarily in the mining company.

Corporations—Exercise of Powers by Directors—Dividends—Statute.

3. Under Section 6691, L. O. L., the powers vested in a corporation, including the declaration of dividends, are exercised by the directors.

Corporations—Declaration of Dividends—Interference by Courts.

4. The question of whether dividends shall be declared by a corporation is ordinarily one of its internal management, with which the courts will not interfere.

Corporations—Dividends—Action of Directors.

5. Directors must act honestly and with discretion in the performance of their duties; which principle applies to their action as to

---

*On inherent jurisdiction of equity independently of statute, at the instance of stockholders, to appoint a receiver because of mismanagement or fraud of its officers, see notes in 39 L. R. A. (N. S.) 1032; L. R. A. 1915A, 606.   REPORTER.

dividends, and in a clear case equity will sometimes compel a corporation to declare a dividend.

### Corporations—Dividends—Stockholder—Right of Action.

6. A court of equity will refuse to treat a misappropriation of corporate funds by majority stockholders as an equitable declaration of a dividend when the complaining stockholder has not qualified himself to sue on behalf of the corporation, and when there is no showing that the financial condition of the corporation is such as to require the directors to declare a dividend.

### Corporations—Suit by Minority Stockholder—Complaint.

7. Where the complaint of a minority stockholder in a mining company against the company, other companies, and an individual who controlled all the companies, did not purport to be brought on behalf of all stockholders similarly situated, and did not allege a demand on the board of directors to bring suit in the corporation's name, and did not sufficiently excuse failure to demand action, the complaint did not state a cause of suit in the corporation's right.

[As to who may sue the corporation he holds stock in, see note in 97 Am. St. Rep. 50.]

### Corporations—Suit by Minority Stockholders—Presumption as to Action of Directors—Statute.

8. The mere fact that directors are elected by the vote of a stockholder against whom suit should be brought for minority stockholders in the name of the company does not raise a presumption they will refuse to order suit brought, or will conduct it collusively; the presumption being that the directors will do their duty under Section 6689, L. O. L., whereby they are sworn faithfully and honestly to discharge their duties.

### Corporations—Suit by Minority Stockholder—Failure to Demand That Directors Sue—Excuse.

9. A minority stockholder, suing in the name of his company, if he would excuse failure to make demand on the directors, should name them, show that they are the guilty parties, or show such relationship to the guilty parties, by blood, marriage, or business associations, as will justify the conclusion they will refuse to do their duty. A general statement that the company or its board is in control of the guilty party will not suffice. If plaintiff has no information as to who the directors are, he should allege acts showing diligence on his part to secure the information, and the obstacles interposed by defendants.

### Corporations—Suit by Minority Stockholder.

10. A minority stockholder in a corporation in a proper case may sue on behalf of the corporation, but this right is liable to abuse and should be limited by adherence to those rules which experience has shown to be necessary.

### Process—Service by Publication—Necessity of Attachment.

11. A suit brought by a stockholder on behalf of his corporation is *in personam*, and relief cannot be granted unless the party against whom the claim is asserted is served or appears; if he is served by publication, there must be a seizure by the court of some property belonging to him on which to base the service by publication.

Corporations—Stock—Jurisdiction—Corporate Stock—Situs.

12.   Stock in an Oregon corporation is subject to the jurisdiction of the Oregon courts, though the certificates are without the state and are owned by nonresidents.

Limitation of Actions—Minority Stockholder's Suit—Laches.

13.   Where, after the lapse of sixteen years, a minority stockholder asserts in equity a cause of action in favor of the corporation which would be barred in six years if the corporation had sued at law, plaintiff's complaint should allege the impediment to an earlier prosecution of the claim, how he remained in ignorance so long, and how and when the matter came to his knowledge.

Limitation of Actions—Recovery of Dividend—Statute.

14.   An action at law to recover a dividend must be brought within six years, under Section 6, L. O. L.

Equity—Laches.

15.   Equity being disposed to follow the law, if an equitable suit is brought within the time allowed to bring a corresponding action at law, the burden is on defendant to allege and prove laches; if the suit is brought after expiration of the time, plaintiff should explain the delay in his bill.

Limitation of Actions—Statute of Limitations—Suspension by Absence or Concealment.

16.   If a minority stockholder, suing his company, others, and an individual in control of all, for misappropriation of corporate funds, relied on Section 16, L. O. L., relative to the effect of absence or concealment in suspending the running of the statute of limitations, his suit having been brought fourteen or fifteen years after the misappropriations, he should have averred that defendant foreign corporations had never done business in Oregon, that the individual defendants had continuously resided in a state other than Oregon since the acts complained of took place, and should set up the aggregate amount of time they had spent in Oregon.

Limitation of Actions—Trusts—Directors and Majority Stockholders —Disavowal of Trust.

17.   A director is a trustee, as is a majority stockholder in some sense; but, when they disavow the trust by misappropriating funds, the statute of limitations begins to run.

Limitation of Actions—Running in Favor of Trustee.

18.   The statute of limitations will not run in favor of the trustee of an express trust, except when the trustee repudiates the trust and appropriates the property to his own use.

Contracts—Option Contract—Construction.

19.   Where) a contract between plaintiff and defendant provided that plaintiff should have the privilege of purchasing a 5 per cent interest "in the equity now owned by" defendant "in said Columbia mine at the agreed price of $5,000," plaintiff was not entitled to a 5 per cent interest in the mine after the purchase price due the sellers to defendant company had been paid in full.

Reformation of Instruments—Optional Contract—Execution.

20. Where parties have given their contract a practical construction in accordance with its obvious meaning and have fully executed the contract when so construed by them, and where there are no allegations of fraud or imposition, the contract cannot be reformed.

Limitation of Actions—Statute of Limitations—Misappropriation of Corporate Funds.

21. A foreign majority stockholder in an Oregon corporation, who misappropriated moneys of the company in fraud of a minority stockholder, is liable to account for the money misappropriated, unless he can show that he has been in the state more than six years since the misappropriation.

Interest—Legal Rate from Date of Misappropriation of Corporate Funds.

22. Where a director, in control of the funds of the corporation, abstracts and appropriates to his own use a definitely ascertained sum of money to which he is not entitled, the claim of the corporation to reimbursement will bear interest at the legal rate from the date of the misappropriation.

Corporations—Right of Minority Stockholder—Acquiescence in Ultra Vires Expenditures.

23. Expenditures by a mining company on behalf of another mining and milling company located in another state were *ultra vires,* but a minority stockholder in the mining company, who assented to the policy of investing its funds in outside enterprises, and who has made no objection to the investment in question for fifteen years after notice thereof, cannot take advantage of the expenditures in his suit against a majority stockholder for misappropriation of corporate funds.

Corporations—Acquisition of Majority of Stock in Another Company —Duty of Controlling Company.

24. When a corporation acquires a majority of the stock of another corporation, it assumes the obligation to manage the affairs of the controlled company for the benefit of all stockholders, and not for its own aggrandizement.

Corporations—Duty of President and Director.

25. It was the duty of the president of a mining company, one of its directors, to conduct the company's affairs with an eye solely to the interests of the company.

Corporations—Minority Stockholder—Failure to Object to Loans.

26. A minority stockholder in a mining company, who knew of loans to a lumber company controlled by the individual who controlled the mining company, and who made no objection to them before bringing his suit against the individual, the mining company, and various others for misappropriation of the mining company's funds, was not required to permit such method of doing business to continue.

**Embezzlement—Dealing With Funds by Minority Stockholder.**

27.  Where a minority stockholder in a mining company was in active charge of the plant, and learned that the individual in control of the company had misappropriated the company's funds, so that he, the minority stockholder, withdrew the funds the company then had on deposit in a bank, took certificates of deposit, and turned them over to the registry of the court, notifying the controlling individual, he was not guilty of embezzlement.

**Corporations—Remedy of Minority Stockholder—Receivership.**

28.  A minority stockholder in a mining company, on discovering that the individual in control thereof had misappropriated its funds, should have applied for a receivership, instead of himself, he being the active manager of the company, taking certificates of deposit for the company's funds in bank and turning them into the registry of the court in which he sued.

**Corporations—Stockholder's Suit—Evidence.**

29.  The making of improper investments by a majority stockholder in a mining company, though acquiesced in by a minority stockholder, was material in the minority stockholder's suit for misappropriation of funds as characterizing the management of the company.

**Corporations—Right of Minority Stockholder—Receivership.**

30.  A minority stockholder, complaining of misappropriation of corporate funds by a majority stockholder, is proceeding in his own right, and not in the right of the company, if he applies for a receivership.

**Corporations—Stockholder's Suit—Answer.**

31.  In a minority stockholder's suit against his company, others, and an individual controlling them all, defendants, who appeared generally for the first time when decree for plaintiff was entered, should be permitted to answer, if they elect, and to offer any additional proof they may have on remand of the cause.

**Corporations—Records—Keeping in State—Statute.**

32.  Where a mining company, whose minority stockholder is suing it, other companies, and an individual controlling it, for misappropriation of corporate funds, disobeyed an injunction, and removed its records from the state, a mandatory injunction should issue requiring the company to return its records to the state, and to keep them there for inspection as required by Section 6694, L. O. L.

ON PETITION FOR REHEARING.

**Equity—Limitation of Actions—Laches—Waiver.**

33.  Defenses of laches and limitations can be waived, and are deemed waived unless asserted by the litigant entitled to assert them.

**Equity—Limitation of Actions—Laches—Right to Assert.**

34.  If a suit by a minority stockholder against the corporation and others be one brought in its right to recover for it money abstracted from its treasury, it cannot assert defenses of laches and limitations; but otherwise if the suit is an equitable demand on it

for plaintiff's share of a fund which should have been distributed as dividends, in which case it is the adverse party.

### Corporations—Dividends—Declaration.

35. Generally a corporation's officers are sole judges of the propriety of declaring dividends; and a minority stockholder may compel a declaration only on clearly showing that the directors are guilty of fraud or bad faith in accumulating a large surplus and refusing dividends.

### Corporations—Corporate Fiction—Estoppel to Deny.

36. Neither is plaintiff in a position to contend that a corporation is a fiction, nor can the court hold it such, where the company was organized for a lawful purpose, and for years carried on a lawful business, and plaintiff participated in its organization, and all those years served it as director and salaried employee, and made reports on its behalf to the corporation commissioner, and sues as owner of shares of its stock, and has received dividends thereon, and in his complaint alleges its corporate existence.

### Process—Service by Publication.

37. The seizure or control of the *res* which will justify service by publication need not be by attachment, but may be by bill in equity.

### Process—Service by Publication.

38. Service by publication cannot be made unless the court, when the substituted service is invoked, has possession of some property belonging to the defendant so as to be served.

### Corporations—Minority Stockholders—Receiver.

39. It is within the general power of a court of equity to grant a receivership over a corporation, which will not work a dissolution of it, where through it the relief of a minority stockholder against the fraud of majority holders can be best worked out; and where there are no innocent stockholders or creditors liable to be injured thereby this will be done; Section 1108, L. O. L., stating circumstances under which a receiver may be appointed, not divesting or abridging, but enlarging this jurisdiction inherent in courts of equity.

### Contracts—Option Contract—Construction.

40. Contract of plaintiff with the company owning a mine subject to a mortgage, giving him option of purchasing for a certain amount five per cent interest in the "equity now owned by" said company in the mine, does not entitle him to five per cent interest in the property, free of mortgage.

### Corporations—Minority Stockholders—Acquiescence in Diversion of Funds.

41. Evidence in minority stockholder's suit *held* to show he acquiesced in diversion of corporation's funds by way of loan or investment, and so was not entitled to relief on account thereof.

## From Baker: GUSTAV ANDERSON, Judge.

In Banc.    Statement by MR. JUSTICE McCAMANT.

This is a suit brought September 18, 1915, by Frank S. Baillie against Columbia Gold Mining Company, an Oregon corporation, E. W. Backus Lumber Company and Backus-Brooks Company, Minnesota corporations, Harris Richardson, E. W. Backus, William F. Brooks and R. L. Horr. It is alleged in the amended complaint on which the case was tried that the E. W. Backus Lumber Company is a Minnesota corporation of which the defendant Backus was and is president, the other officers being members of his family; that the defendant Backus-Brooks Company is the successor to the business of E. W. Backus Lumber Company and is under the same control and management; that on August 17, 1896, R. C. Leavitt, acting on behalf of E. W. Backus Lumber Company, secured from Cable Brothers an option for the purchase of some mineral property situate in Baker County, Oregon, which will be hereinafter referred to as the Columbia Mine; that the option was executed in consideration of the payment of $10,000 in cash. It called for a purchase price of $70,000 additional, payable in installments maturing at intervals between January 1, 1897, and January 1, 1900.

It is alleged that about October 1, 1896, E. W. Backus Lumber Company entered into the possession of the property and commenced the construction of a mill thereon; that the mill was completed about December 25, 1896. An additional $10,000 was paid on account of the purchase price under the option, being the installment due January 1, 1897. It is alleged that Backus, acting on behalf of E. W. Backus Lumber Company, employed plaintiff in September, 1896, to investigate the Columbia Mine and report on the property and its development; that the plaintiff made a

trip from Minneapolis to Baker, Oregon, for such purpose, remained on the property for a considerable period of time and on January 7, 1897, entered into a contract in writing with E. W. Backus Lumber Company, whereby it was provided that plaintiff should enter into the permanent employ of the company in the management of the Columbia Mine and should have the right to purchase a five per cent interest in the equity therein then owned by the E. W. Backus Lumber Company for $5,000. Prior to the date of the contract $1,000 was paid by plaintiff. Payment of this sum was acknowledged in the contract and the remainder was to be paid by plaintiff with eight per cent interest on or before five years from date.

It was further provided that in case a corporation should be organized to take over the property plaintiff should hold five per cent of its stock, and that this stock should be pledged as collateral security for the payment of the balance of the purchase price. The contract provided that in case plaintiff's employment should be terminated for any reason, the E. W. Backus Lumber Company should have the privilege of buying back plaintiff's interest in the property by paying him the amount which he had paid on account thereof, with eight per cent interest. Plaintiff alleges that he subsequently paid the full amount of said purchase price.

The Columbia Gold Mining Company, an Oregon corporation, was organized on July 31, 1897; its capital stock consisted of fifteen hundred shares, each of the par value of $100. Seventy-five shares became the property of plaintiff and were immediately pledged by him to E. W. Backus Lumber Company as security for $3,111.50, the amount remaining at that time unpaid on the purchase price of $5,000.

It is averred that at the time when the Columbia Gold Mining Company was incorporated E. W. Backus Lumber Company had advanced in the aggregate $33,538.39, in payment of the purchase price of the property or in its development, and that there remained due to Cable Brothers on account of the purchase price the sum of $60,000; that a deed was secured from Cable Brothers and a mortgage given them to secure the sum of $60,000 still unpaid on account of the purchase price.

Leavitt assigned the option to plaintiff and plaintiff, in turn assigned the option to Columbia Gold Mining Company, in payment of the stock subscriptions.    Two shares of stock were assigned to John L. Rand and J. H. Parker, to qualify them as directors.    The original board of directors consisted of R. C. Leavitt and A. E. Horr, of Minneapolis, J. H. Parker, John L. Rand and plaintiff, of Baker, Oregon.    Leavitt was president; plaintiff, vice-president; R. L. Horr, secretary, and A. E. Horr, treasurer.

The amended complaint charges that the mine was not self-supporting until May, 1899, and that the advances of E. W. Backus Lumber Company to May, 1899, aggregated $65,517.18, of which $33,538.39 represented advances prior to the incorporation of the Columbia Gold Mining Company; that in the month of May, 1899, the mine began to produce large sums of money, and that during the remainder of the year 1899 the sum of $130,981.06 over and above the expenses of operation was realized from its operation and remitted to A. E. Horr, treasurer, at Minneapolis; that during this period plaintiff was removed as manager and the resignations of Parker and Rand were secured; that Parker and Rand thereupon assigned the stock which they held to E. W. Backus Lumber Company; and that

the defendant Backus sent plaintiff into Idaho to investigate other mineral property. About the beginning of the year 1900 the defendant Backus restored plaintiff to his position of manager of the property.

It is alleged that without the consent or knowledge of plaintiff and without taking any corporate action thereon, the defendant Backus misappropriated, embezzled and converted to his own use funds of the corporation aggregating $103,174.50. The complaint thereupon sets up the entries made in the books at the instance of the defendant Backus, covering the funds so alleged to have been misappropriated and converted.

It is charged that among the moneys so taken from the corporation was a sum equivalent to the entire investment of the E. W. Backus Lumber Company in the mine; that large sums of money belonging to the Columbia Gold Mining Company were fraudulently loaned by the defendant Backus to the defendant Backus-Brooks Company, which was controlled by the defendant Backus; and that the defendant Backus-Brooks Company paid interest at the rate of four and one-half or five per cent on such loans, although Columbia Gold Mining Company was paying interest at the rate of eight per cent on moneys owing to Cable Brothers on account of the purchase price of the property.

Plaintiff alleges that during the years 1900 and 1901 there was realized over and above expenses of operation the sum of $190,572.28, which sum was embezzled, misappropriated and converted by the defendants Backus, Backus-Brooks Company and E. W. Backus Lumber Company; that these conversions were without the knowledge or consent of plaintiff; that the said defendants pretended to loan the said sums of money to corporations controlled by themselves, in which the Columbia Gold Mining Company had no interest, and

that the said moneys were expended on other concerns promoted by the defendant Backus; all of which was done without the knowledge or consent of plaintiff.

It is further averred that notwithstanding the large sum of money which had been realized from the operation of the mine, the defendants refused to declare a dividend until the year 1909, at which time $230,000 was distributed in dividends. It is charged that plaintiff, in order to secure such distribution, was obliged to accept the notes of the defendant Backus for $10,000 in lieu of cash. Plaintiff's note given in payment for stock had been gradually reduced, and the last $1,500, it is alleged, was wiped out at the time when the dividend was declared. Plaintiff avers that until this note was fully paid plaintiff was without authority or power to object to any of the matters of which he complains in this suit.

It is further alleged that subsequent to 1909 about $100,000 was distributed in dividends without corporate action but with the consent of all of the stockholders. Plaintiff retained five per cent thereof, and the defendant Backus received ninety-five per cent thereof.

It is alleged that R. C. Leavitt died in 1897; that A. E. Horr died in 1908, and that no meetings of the board of directors of the defendant Columbia Gold Mining Company have been held within the knowledge of plaintiff subsequent to the meeting held at the organization of the corporation in 1897, and that plaintiff is ignorant as to whether any board has been elected or who are assuming to act as directors of the corporation.

The complaint charges that in April, 1915, plaintiff was instructed by the defendant Backus to close down the mine on September 1st; that there was on deposit

in the summer of 1915, to the credit of the Columbia Gold Mining Company, $15,000 in the First National Bank at Baker, Oregon; that plaintiff put $14,756.83 thereof in the form of certificates of deposit in the name of plaintiff, claiming that he was entitled to this sum in view of the large misappropriations of the funds of the corporation which had been made by the defendants holding the majority of its stock. These certificates of deposit were put into the registry of the court at the time when this suit was brought, plaintiff notifying defendants at the time when the money was withdrawn from the bank. It is alleged that thereupon a meeting of the board of directors was held at Minneapolis and that the defendant Richardson thereafter came to Baker, pretended to remove plaintiff from his position as manager of the mine and to assume exclusive control of its affairs and property in Baker County, Oregon; that on August 27, 1915, plaintiff paid all of the debts of the corporation and all of its expenses for operation up to that time and thereupon surrendered the mine with its books, documents, assets and funds, to the defendant Richardson. It is then averred that the Columbia Gold Mining Company, through the defendant Richardson, has brought an action at law against the First National Bank of Baker, Oregon, charging that the bank had converted the funds of the Columbia Gold Mining Company, in that it permitted the plaintiff to withdraw the sum of $14,756.83.

It is alleged that the defendant Richardson has conspired with the defendant Backus to remove from the mine and from the State of Oregon all of the papers and books of the defendant, and that in the event of such removal the same would not be available as evidence in the trial of this cause.

Plaintiff charges that he has demanded of the defendants his proportion of the moneys wrongfully misappropriated, but that the defendants have refused to account to him therefor; that all of the defendants, with the exception of the Columbia Gold Mining Company, are residents of the State of M'nnesota. The complaint closes with an allegation as to the control of the Columbia Gold Mining Company by the defendant Backus, which is quoted at large in the opinion. The prayer is that plaintiff have a decree for the payment to him of five per cent of the moneys misappropriated by the defendants, that the moneys to which plaintiff is entitled be charged as a lien on the interest of the individual defendants in the Columbia Gold Mining Company and its property; also that the prosecution of the action at law by Columbia Gold Mining Company against the First National Bank be enjoined.

The defendants Columbia Gold Mining Company and Richardson demurred separately to the complaint and on the overruling of the demurrers filed answers. The answer of the defendant Columbia Gold Mining Company contains no affirmative plea of estoppel, waiver, acquiescence, statute of limitations or laches, although its denials are qualified by affirmative matter which indicates that these defenses were in the mind of the pleader. The reply denies the affirmative matter contained in the answer of the Columbia Gold Mining Company.

A large amount of testimony was taken by the respective parties and on January 24, 1917, a decree was passed by the Circuit Court adjudging that plaintiff was entitled to $20,444.97 as his proportionate part of the moneys of the Columbia Gold Mining Company, distributed by the other defendants to themselves. Plaintiff was adjudged to be the owner of the moneys

represented by the certificates of deposit in the registry of the court and was given a decree for the recovery of the additional sum of $5,688.14, which sum was charged as a lien on the interests owned and held by the defendants E. W. Backus Lumber Company, E. W. Backus and Backus-Brooks Company in the Columbia Gold Mining Company. Plaintiff was given a similar lien for his costs and disbursements. The decree enjoins prosecution of the action at law against the First National Bank.

Personal service was secured on the defendants Richardson and Columbia Gold Mining Company and the other defendants were undertaken to be served by publication. A special appearance was entered on behalf of the defendant Backus, and on such special appearance he endeavored to remove the cause to the District Court of the United States for the District of Oregon. The right to remove was denied both by the state court and by the federal court: *Baillie* v. *Backus,* 230 Fed. 711. No further papers were filed by the defendant Backus in the lower court, but the final decree recited a general appearance for all of the defendants by Messrs. Harris Richardson, Samuel White and M. D. Clifford. The appeal is on behalf of Columbia Gold Mining Company and Harris Richardson.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

REVERSED AND REMANDED.

For defendants-appellants there was a brief over the names of *Mr. Harris Richardson* and *Mr. Morton D. Clifford,* and *Mr. Samuel White* appeared as their counsel.

For plaintiff and respondent there was a brief over the names of *Mr. James H. Nichols, Messrs. Smith & Smith* and *Mr. John L. Rand.*

MR. JUSTICE McCAMANT delivered the opinion of the court.

1. Error is assigned on the order of the Circuit Court overruling the demurrer to the amended complaint. The demurrer charges multifariousness, insufficiency of facts and failure to bring the suit within the time limited by the Oregon Code. We do not think the complaint multifarious. It alleges a series of fraudulent acts committed by the defendants by virtue of their control of the defendant Columbia Gold Mining Company, hereinafter called the Columbia Company. The allegations with reference to plaintiff's right to an injunction are properly pleaded in a single count with other allegations. Our conclusions on this branch of the case are in harmony with those of the federal court: *Baillie* v. *Backus,* 230 Fed. 711, 716.

On the other grounds set up in the demurrer the amended complaint is more vulnerable to attack. The essence of the amended complaint is a charge that the defendants E. W. Backus Lumber Company, Backus-Brooks Company and E. W. Backus, in the years 1899–1901 inclusive, abstracted from the funds of the Columbia Company $293,746.78 and converted the same to their own use in fraud of plaintiff's rights as a minority stockholder. Plaintiff claims that these sums should have been distributed as dividends and on that ground claims judgment for five per cent of the above amount, he holding five per cent of the stock of the corporation.

2–4. Unless plaintiff is entitled as of right to the distribution of this sum as a dividend, his complaint is obnoxious to demurrer except that it might be upheld as stating sufficient facts to entitle him to an injunction restraining the defendants from removing the corporate records from the state. The wrongs alleged are

primarily wrongs done the Columbia Company. Every dollar of the money converted belonged to the Columbia Company. Such injury as plaintiff sustained was consequential and the right of action for the recovery of the moneys taken is primarily in the Columbia Company: *Flynn* v. *Brooklyn City R. Co.,* 158 N. Y. 493 (53 N. E. 520, 524); *Smith* v. *Hurd,* 12 Met. (53 Mass.) 371 (46 Am. Dec. 690); *Ames* v. *American Telephone & Telegraph Co.,* 166 Fed. 820. Under our statute the powers vested in the corporation are exercised by the directors: Section 6691, L. O. L. One of these powers is the declaration of dividends. The question of whether dividends shall be declared is ordinarily one of internal management with which the courts will not interfere: *Gibbons* v. *Mahon,* 136 U. S. 549, 557–559 (34 L. Ed. 525, 10 Sup. Ct. Rep. 1057). The general rule is that a shareholder cannot acquire title to the corporate property except through a corporate act: *United States Radiator Corp.* v. *State,* 208 N. Y. 144 (101 N. E. 783, 786, 46 L. R. A. (N. S.) 585); *Hughes* v. *Oregonian Ry. Co.,* 11 Or. 158, 160 (2 Pac. 94).

5. It is true that the directors must act honestly and with discretion in the performance of their duties, and this principle applies to their action in the matter of dividends. In a clear case equity will sometimes compel a corporation to declare a dividend: 7 R. C. L. 269; 2 Clark and Marshall on Corporations, 517f, 527b. The amended complaint in this case contains no allegations from which it can be inferred that the board of directors has abused its discretion in withholding dividends. It is not alleged that the corporate enterprise has been abandoned, nor are the capital requirements of the Columbia Company set out. No facts are set up from which we can ascertain the probable expense

of caring for the property, maintaining it and paying taxes upon it.   It is not alleged that the capital stock is intact or that there are funds in the treasury except in a small amount; on the contrary, it is averred that the assets of the corporation have in large part been made away with.   It is alleged that plaintiff has paid all debts incurred prior to August 27, 1915, but this allegation falls far short of justifying the conclusion that the funds of the corporation should be distributed in dividends.

The authorities relied on by plaintiff do not support his contention on this branch of the case.   The case of *Stevens* v. *South Devon Company*, 9 Hare, 313, 325, 326, involved the issue of preferred stock under express authority of an act of Parliament.   A common stockholder sought to restrain the payment of dividends to preferred stockholders.   The court held that the question was one of internal management and denied the injunction prayed for.   In *Brown* v. *Buffalo etc. R. Co.*, 27 Hun  (N. Y.), 342, a minority stockholder sued the corporation and Miller, its president, alleging the conversion of corporate funds by Miller and the withholding by the corporation of dividends due plaintiff. The court held that:

"Upon the facts alleged in the complaint, the plaintiff may maintain his action against the company alone for fraudulently withholding the plaintiff's share of the moneys received by it, which ought to have been divided among the stockholders."

The facts alleged in the complaint are not set out in the opinion.   The court cites *Prouty* v. *Michigan Southern etc. R. Co.*, 1 Hun  (N. Y.), 655; this case holds that a preferred stockholder may sue on behalf of himself and all others similarly situated, and recover on proof that there are net profits applicable to

86 Or.—2

the payment of dividends. We infer that *Brown* v. *Buffalo etc. R. Co.*, 27 Hun (N. Y.), 342, was also a case involving the rights of preferred stock.

The case of *Robinson* v. *Smith,* 3 Paige (N. Y.), 222, 231 (24 Am. Dec. 212), merely announces the elementary proposition that directors are trustees and liable as such for malfeasance or negligence. *Scott* v. *Eagle Fire Co.*, 7 Paige (N. Y.), 198, 203, was a suit brought to divert the assets of an insolvent corporation to the payment of dividends. The bill was dismissed, but Chancellor WALWORTH does say in passing:

"On the other hand, should they (the directors) without reasonable cause refuse to divide what is actually surplus profits, the stockholders are not without remedy, if they apply to the proper tribunal, before the corporation has become insolvent."

This language of the Chancellor is quoted in *Pratt* v. *Pratt,* 33 Conn. 446. This last case holds that if there is reasonable ground for withholding a dividend, the discretion of the directors will not be interfered with. *Beers* v. *Bridgeport Company,* 42 Conn. 17, 24, was a case in which a dividend had been declared and credited to the respective accounts of the stockholders. A subsequent vote of the board returning the fund to the surplus of the corporation was held nugatory. The court said:

"There can be such a condition of things as will justify a court of equity in compelling directors to declare a dividend contrary to their judgment."

In *State of Louisiana* v. *Bank of Louisiana,* 6 La. 745, the directors had taken action fixing the surplus of the bank; the court refused to interfere with their discretion in this respect, but did require the distribution in dividends of other funds available for the purpose. These are all the authorities cited by plaintiff

to sustain this branch of his contention, except Clark and Marshall on Corporations, which we have cited above.

6. We have found a few cases in which stockholders have sued on behalf of themselves and all others similarly situated for the redress of wrongs done the corporation, in which the court has in effect directed a dividend, by requiring the unfaithful majority to pay the minority its aliquot share of moneys taken from the corporate treasury: *Brown* v. *De Young,* 167 Ill. 549 (47 N. E. 863, 866); *Eaton* v. *Robinson,* 19 R. I. 146 (31 Atl. 1058, 32 Atl. 339, 29 L. R. A. 100); *Fougeray* v. *Cord,* 50 N. J. Eq. 185, 198–200 (24 Atl. 499); *Davis* v. *Gemmell,* 73 Md. 530, 534 (21 Atl. 712); *Crichton* v. *Webb Press Co.,* 113 La. 167, 183 (36 South. 926, 104 Am. St. Rep. 500, 67 L. R. A. 76). The doctrine of these cases is applicable only where the court can say that the powers of the directors will be abused to the injury of the complaining stockholders and that the circumstances clearly call for the declaration of a dividend. In the above cases the relief granted was incidental to a recovery in the right of the corporation at the suit of a stockholder.

7. Plaintiff admits in his brief that his suit is not brought in the right of the corporation. Even under the liberal rule announced by this court in *Wills* v. *Nehalem Coal Co.,* 52 Or. 70, 87–89 (96 Pac. 528), the amended complaint cannot be upheld as stating a cause of suit in the right of the corporation. It does not purport to be brought on behalf of all stockholders similarly situated, nor is the absence of this allegation excused by distinct averment that plaintiff is the only stockholder not concerned in the frauds complained of. The amended complaint does not allege a demand on the board of directors to bring suit in the

name of the corporation, nor does it sufficiently excuse such failure to demand action by the board. The allegations of the amended complaint on this subject are:

"That the said Columbia Gold Mining Company has in all matters been controlled by the defendant E. W. Backus, and plaintiff has been unable and is unable to secure any relief from the said Columbia Gold Mining Company on account of the defendants herein owning and controlling ninety-five per cent of the capital stock of said company and having it within their power to completely control the election of officers and the conduct of the business of said company, and are unwilling to, and will not, act in this matter for the benefit and protection of said Columbia Gold Mining Company and this plaintiff or either thereof."

8, 9. The mere fact that directors are elected by the vote of a stockholder against whom suit should be brought, does not raise a presumption that they will refuse to order a suit brought or will conduct such suit collusively. Under our statute directors are sworn to "faithfully and honestly discharge" their duties: Section 6689, L. O. L. The presumption is that the directors will do their duty. If plaintiff would excuse a failure to make demand on the directors, he should name the directors, show that they themselves are the guilty parties, as in *Wills* v. *Nehalem Coal Co.,* 52 Or. 70 (96 Pac. 528), and *North* v. *Union S. & L. Assn.,* 59 Or. 483 (117 Pac. 822), or show such relationship to the guilty parties by blood, marriage or business associations, or such other facts, as justify the conclusion that they will refuse to do their duty. A general statement that the corporation or its board of directors is in control of the guilty party will not suffice: *Allen* v. *Wilson,* 28 Fed. 677, 678, 679; *Squair* v. *Lookout Mountain Co.,* 42 Fed. 729, 732; *Watson* v. *U. S. Sugar Refinery Co.,* 68 Fed. 769, 773 (15 C. C. A.

662); *Hawes* v. *Oakland,* 104 U. S. 450, 460, 461 (26 L. Ed. 827); *Dimpfel* v. *Ohio etc. R. Co.,* 110 U. S. 209, 211 (28 L. Ed. 121, 3 Sup. Ct. Rep. 573); *Taylor* v. *Holmes,* 127 U. S. 489, 492 (32 L. Ed. 179, 8 Sup. Ct. Rep. 1192); *Dunphy* v. *Traveller Newspaper Assn.,* 146 Mass. 495, 498 (16 N. E. 426); *Moore* v. *Silver Valley Min. Co.,* 104 N. C. 534, 545 (10 S. E. 679); *Alexander* v. *Searcy,* 81 Ga. 536, 549, 550 (8 S. E. 630, 112 Am. St. Rep. 337); *Rathbone* v. *Parkersburg Gas Co.,* 31 W. Va. 798, 805, 806 (8 S. E. 570); *Decatur Mineral Land Co.* v. *Palm,* 113 Ala. 531, 539 (21 South. 315, 59 Am. St. Rep. 140); *New Birmingham Iron etc. Co.* v. *Blevens,* 12 Tex. Civ. App. 410, 421 (34 S. W. 828); *House* v. *Cooper,* 30 Barb. (N. Y.) 157, 158. If plaintiff has no information as to who the directors are, he should allege acts showing diligence on his part to secure the information and the obstacles interposed by the defendants thereto.

10. The right of a minority stockholder to sue on behalf of the corporation in a proper case is well established, but it is a right liable to abuse by unscrupulous stockholders and it should be jealously guarded by adherence to those limitations which the experience of courts of equity has shown to be necessary. A cause of suit, held by a corporation should ordinarily be asserted by the corporation; if the suit be conducted collusively, a court of equity will always permit intervention by a stockholder to protect his rights and the rights of others similarly situated.

11, 12. A suit brought by a stockholder on behalf of a corporation is a suit *in personam* and relief cannot be granted unless the party against whom the claim is asserted is served or appears. If he is served by publication there must be a seizure by the court of some property belonging to him on which to base the service

by publication; *Bank of Colfax* v. *Richardson,* 34 Or. 518, 524 (54 Pac. 359, 75 Am. St. Rep. 664). Otherwise such attempted service is nugatory. In the present case there was no such seizure. The fund paid into court by plaintiff belonged to the Columbia Company. It is true that the stock of the other defendants is subject to the jurisdiction of the Oregon courts, although the certificates are without the state and are owned by nonresidents: *Gamble* v. *Dawson,* 67 Wash. 72 (120 Pac. 1060, Ann. Cas. 1913D, 561). But this stock was not seized or impounded in any manner at the inception of the litigation and the suit involves no property in which the parties charged with fraud were interested within the purview of Section 399, L. O. L. The attempted service by publication was therefore ineffectual and at the time of the trial the court had jurisdiction of none of the defendants except the Columbia Company and Richardson. For several reasons, therefore, the record did not entitle the Circuit Court to treat this as a suit brought on behalf of the corporation, nor did the court so treat it.

13. The amended complaint is obnoxious to demurrer on another ground. Plaintiff bases his cause of suit on the misappropriation of moneys belonging to the Columbia Company in the years 1899, 1900 and 1901. His suit was brought September 18, 1915. He alleges that the moneys were misappropriated and converted without his knowledge and that the entries in the books of the Columbia Company were made long after the misappropriations. It is alleged that at the time when the suit was brought the defendants, except the Columbia Company, resided in the State of Minnesota. There are no further allegations explanatory of plaintiff's long delay in bringing suit, except a paragraph which alleges that plaintiff was without power to as-

sert his rights until he had paid for his stock in 1909. The contention advanced in this portion of the complaint is clearly untenable. Plaintiff's debt for the payment of his stock could have been discharged at any time. He may not have had the money to pay it in full, but his poverty could not prolong the time allowed him within which to sue. Under our form of government there cannot be one law for the rich man and another for the poor.

14, 15. If we understand aright plaintiff's theory of this case, it is that equity will treat the misappropriation of the funds of the Columbia Company by its majority stockholder as an equitable declaration of a dividend, entitling plaintiff as a minority stockholder to his aliquot share of the moneys misappropriated. An action at law for the recovery of a dividend would have to be brought within six years: Section 6, L. O. L. Equity is disposed to follow the law. If an equitable suit is brought within the time allowed to bring a corresponding action at law, the burden devolves on the defendant to allege and prove laches; if the equitable suit is brought after the expiration of the time allowed to bring the corresponding action at law, plaintiff should explain the delay in his bill: *Wills* v. *Nehalem Coal Co.,* 52 Or. 70, 91 (96 Pac. 528). Plaintiff does not allege when he acquired the information on which he bases his right to recover. The complaint in this case should allege the impediments to an earlier prosecution of plaintiff's claim, how he remained in ignorance so long and how and when the matter came to his knowledge: *Badger* v. *Badger,* 2 Wall. (U. S.) 87, 95 (17 L. Ed. 836); *Weiss* v. *Bethel,* 8 Or. 523, 528; *Loomis* v. *Rosenthal,* 34 Or. 585, 601 (57 Pac. 55). Plaintiff cites authorities to the effect that the statute of limitations does not begin to run against a stock-

holder claiming a dividend until the dividend is declared. This principle cannot help plaintiff, because he is obliged to contend that the frauds of those in control of the corporation constitute an equitable declaration of a dividend and these frauds were perpetrated more than six years prior to the bringing of this suit.

16. If plaintiff relies on Section 16, L. O. L., as interpreted in *Jamieson* v. *Potts,* 55 Or. 292 (105 Pac. 93, 25 L. R. A. (N. S.) 24), he should aver that the defendant Minnesota corporations have never done business in Oregon, that the individual defendants have continuously resided in Minnesota since the acts complained of have taken place, and he should set up the aggregate time which they have severally spent in Oregon.

17, 18. Plaintiff cites authorities to the effect that a director is a trustee, that a majority stockholder is in some sense a trustee and invokes the rule that the statute of limitations will not run in favor of a trustee of an express trust. These principles are sound, but the latter principle is subject to a limitation which makes it inapplicable to this case; when the trustee repudiates his trust and appropriates the trust property to his own use, the statute begins to run in his favor: *Raymond* v. *Flavel,* 27 Or. 219 234, 235 (40 Pac. 158); *Crow* v. *Crow,* 70 Or. 534, 554, 555 (139 Pac. 854). The allegations of the amended complaint are that the defendants converted to their own use large sums of money, taking them from the treasury and investing them in various enterprises in which plaintiff is not interested. This was certainly a disavowal of any trust with reference to these funds.

We are obliged to hold that the Circuit Court erred in overruling the demurrers to the amended complaint.

If the amended complaint were upheld as sufficient and if we could accept plaintiff's view of the law as

correct, we would have to accord plaintiff a decree on the pleadings. The answer not only fails to plead affirmatively the waiver by acquiescence and the estoppel on which the defendants chiefly rely, but it admits the most material allegations of the complaint. For example, it is alleged in the fifteenth paragraph of the amended complaint that the defendants Backus, Backus-Brooks Company and E. W. Backus Lumber Company "embezzled, misappropriated, took and converted to their own use" $103,174.50 and $190,572.28. The corresponding allegation in the answer is as follows:

"Said defendant further alleges that if either said defendant Backus, said Backus-Brooks Company or E. W. Backus Lumber Company, or any of the other defendants ever wrongfully or otherwise, illegally or otherwise, fraudulently or otherwise embezzled or misappropriated or took, or converted to their use, or to the use of either of them any moneys or property or effects of said Columbia Gold Mining Company, which they or either of them had no right to take or receive, whether as alleged in the fifteenth subdivision of said complaint or otherwise, said defendant did not realize it nor did said plaintiff ever call it to its attention or make any claim to that effect."

Substantial justice clearly requires that this cause be reversed and that the parties have leave to amend to the end that their contentions may be properly passed on. They both have something to amend by.

If we were to stop here this case would shortly be back in this court on a second appeal. In the trial of the issues nearly twenty-five hundred pages of testimony have been taken and the abstracts and briefs aggregate upwards of nine hundred pages of printed matter. In view of the burden of the parties in these proceedings we think we should state our views on the

controverted questions arising on this record, assuming that by proper amendment of the pleadings the questions really in dispute can be determined and a decree entered in the Circuit Court which will terminate this particular suit.

19, 20. On January 7, 1897, plaintiff made a contract with E. W. Backus Lumber Company under which he acquired subsequently the seventy-five shares of stock in the Columbia Company which are the basis of the present suit. Plaintiff contends and the lower court found that on a proper construction of this contract plaintiff was entitled to a five per cent interest in the Columbia Mine after the purchase price due Cable Brothers had been paid in full. We cannot agree with this conclusion. The salient language of the contract is as follows:

"Said Baillie shall have the privilege of purchasing a five per cent interest in the equity now owned by said first party in said Columbia Mine at the agreed price of $5000."

The testimony shows that the word "equity" was used deliberately and advisedly. At the date of the contract $20,000 had been paid on a total purchase price of $80,000 and some additional money had been spent in improving the property. When the Columbia Company was incorporated a few months later, the parties gave the agreement a practical construction which is significant, if not controlling. The option for the purchase of the mine was assigned to plaintiff and by him turned over to Columbia Company in payment for the capital stock amounting to $150,000. At the time when the option was so transferred to the Columbia Company, the investment of the E. W. Backus Lumber Company in the enterprise was $33,538.39. After the incorporation of the Columbia Company,

Baillie received a certificate for seventy-five shares of its stock, being five per cent of the total issue, and he pledged this stock as collateral security for the unpaid balance of the $5,000, the purchase price thereof. Plaintiff also participated in the execution by the corporation of a mortgage for $60,000 given Cable Brothers to secure the remainder of the purchase price. It was clearly contemplated that the corporation should pay this $60,000. Plaintiff agreed to pay $5,000 for a one-twentieth interest in an equity which had cost E. W. Backus Lumber Company $33,538.39. The contract has been fully executed and it cannot now be reformed, even if the evidence justified a reformation, which it does not. The defendant Backus drove a hard bargain; in dealing with plaintiff he capitalized at $100,000 an asset which had cost his company one third of that sum. It is true that Baillie only took an option and that he was under no obligation to pay the full purchase price unless on investigation he concluded that it was wise to do so. But Baillie had paid on account of the option $1,000, which he had saved out of a small salary and which was his whole capital. If he had failed to complete the purchase he would have forfeited this sum and other moneys paid subsequently thereon.

The record contains other evidence of the bargain-driving characteristics of the defendant Backus. Plaintiff's salary was $100 a month down to January 1, 1902. During the last three years in which this salary was paid plaintiff, he was managing a business of which the net returns were $106,107.72 per annum. In 1901 the defendant Backus took from the treasury of the Columbia Company $100,000 and replaced it with two notes of Backus-Brooks Co. bearing interest at the rate of four and one half and five per cent, respec-

tively. Backus-Brooks Co. is the same corporation as the E. W. Backus Lumber Company, its name having been changed in 1899. Its capital stock is $600,000, of which $500,000 belonged in 1901 to the defendant Backus. The two notes so given remained unpaid until 1909, carrying the low interest rates aforesaid for approximately eight years. During all these years the defendant Backus turned a deaf ear to plaintiff's requests for the declaration of dividends. When a dividend was finally declared in 1909 one of the employees of Backus-Brooks Co., or Backus-Brooks Company, the Maine corporation which succeeded to the business in 1903, charged plaintiff six per cent interest on a balance of about $1,500 still unpaid on his contract for the purchase of his stock, although the contract called for interest at the rate of eight per cent. Again and again in his testimony the defendant Backus recurs to this incident, complaining bitterly of the failure to exact from plaintiff the last dollar due on his contract.

At the time when the Columbia Mine was purchased the defendant Backus agreed with McIntyre and Lee that they should have twenty per cent of the net profits of the mine in consideration of their services as brokers in effecting the purchase. The defendant Backus gave strict instructions that they were to be kept in ignorance of the condition and output of the mine, and while they were without information on the subject, in 1899, he bought them off for $3,000. Under their agreement they would have been entitled to $26,000 in the year 1899 and nearly $20,000 additional in each of the two following years. In 1899, at a time when the Columbia Company had $41,000 in its treasury, plaintiff wrote the defendant Backus requesting that these moneys be used to pay the balance of the purchase price owing to Cable Brothers on which the Columbia

Company was paying eight per cent interest. The defendant Backus replied declining so to do and stating that he was considering whether it would not be profitable to default on the purchase money mortgage and permit Cable Brothers to take back the mine. The $41,000 in the treasury had all been taken out of the mine; but the defendant Backus had no appreciation of his moral obligation to use this money in payment of the purchase price or to pay this purchase price at all.

It appears from the testimony that about September 1, 1899, the defendant Backus temporarily displaced plaintiff from his position as manager of the mine and sent him into Idaho. While plaintiff was absent from the mine, the defendant Backus on December 29, 1899, drew a check for $64,517.18 on the bank account of the Columbia Company and turned the proceeds of the check into the coffers of Backus-Brooks Co. A part of the money so taken was in reimbursement of advances made the corporation, and these sums were properly repaid by the Columbia Company to the lumber company. The check included the sum of $33,538.39 to which the lumber company had no shadow of right. The defendant Backus undertook to take from the treasury of the corporation a sum of money equivalent to that invested by the lumber company in the equity used to pay for the capital stock of the Columbia Company. Plaintiff was probably removed from his position and sent out of the state in order that these moneys could be abstracted without his knowledge. The defendant Backus undertakes to defend this act by swearing that plaintiff agreed to it. This testimony is emphatically denied by plaintiff. The testimony shows plaintiff to be a man of intelligence and we cannot believe that he assented to so gross a

fraud upon himself.   The fraud is aggravated by the relations of the parties.   The defendant Backus claims to have regarded plaintiff almost as a member of his family; one of the Backus children was named for plaintiff.   Plaintiff was a young man thirty years of age, with no assets except his interest in this mine. The defendant Backus was a man of mature years, the head of a prosperous business.   The mine had become a producer under the able management of plaintiff working for a salary pitifully inadequate.

21, 22.   Plaintiff claims that he did not appreciate the fraud so perpetrated upon him until he had the books of the Columbia Company experted in the summer of 1915 and we believe his testimony in this regard.   We would not hold that he acquiesced in this transaction without clear and cogent proof.   So far as the Oregon courts are concerned, the defendant Backus is liable to account for the money so misappropriated unless he can show that he has been in the state of Oregon more than six years since 1899: Section 16, L. O. L., *Jamieson* v. *Potts,* 55 Or. 292 (105 Pac. 93, 25 L. R. A. (N. S.) 24).   The fund is money had and received to the use of Columbia Company; it is liquidated and Backus-Brooks Co. never at any time had a right to a dollar of it.   The case therefore falls without the doctrines of *Baker County* v. *Huntington,* 48 Or. 593, 603 (87 Pac. 1036, 89 Pac. 144), and *Holtz* v. *Olds,* 84 Or. 567 (164 Pac. 583, 1184).   The claim bears interest at the legal rate.   The evidence indicates that the money in some form came into the hands of Bachus-Brooks Company, the Maine corporation, when it succeeded to the business of the lumber company in 1903. The evidence forecloses any contention that this latter corporation could be an innocent purchaser; the defend-

ant Bachus controls its stock and there is no suggestion by any witness that it has any stockholders other than those who held stock in the Minnesota corporation. The evidence of both plaintiff and the defendants shows conclusively that the defendant Backus dominates any enterprise with which he is connected and that he has dominated absolutely the corporations with which we are concerned in this case.

23. Plaintiff's next ground for complaint is the investment of funds of the Columbia Company in a mining enterprise located in Gunnison County, Colorado, owned by Midland Mining and Milling Company. The books of the Columbia Company show a diversion of its funds to the extent of $36,661.05 in this enterprise. These expenditures were *ultra vires,* but we think that plaintiff is in no position to take advantage of them. The testimony satisfies us that he assented to the policy of investing the funds of the Columbia Company in outside enterprises. While he was under salary from the Columbia Company he investigated some mines in Idaho and turned in to the Columbia Company his account for traveling expenses. The books of the Columbia Company were kept under plaintiff's direction, part of the time by Mr. Packwood and the remainder of the time by Mrs. Baillie. They show an account with Midland Mining and Milling Company at all times from 1899 to 1915 and the account was a live one, figuring in every trial balance and subject to change as items were added to it from time to time. It appears on the face of the account that a large block of stock in the Midland Company was held by the Columbia Company. Plaintiff admits, furthermore, that he figured in some negotiations at Denver looking to the sale of the property.

These latter remarks are equally applicable to the investment of the funds of the Columbia Company in some Nome properties owned now by Northern Mining and Trading Company. This investment is repre-sented by a large block of stock and a note of date January 2, 1912, for $36,173.25. We think that the evidence shows acquiescence by plaintiff in this diversion of the funds of the Columbia Company. On this branch of the case the defendants are entitled to prevail: *Allen* v. *Wilson,* 28 Fed. 677, 680; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159, 184; *Babcock* v. *Farwell,* 245 Ill. 14 (91 N. E. 683, 692, 137 Am. St. Rep. 284, 19 Ann. Cas. 74); *Stanley* v. *Luse,* 36 Or. 25, 35 (58 Pac. 75).

24, 25. Prior to 1903 it had been determined that the interests of the Columbia Company required it to keep intact a rich body of ore referred to in the testimony as the Bonanza Chute. The defendant Backus-Brooks Company sustained some heavy losses in 1903 and with a view to recouping them the defendant Backus directed the milling of this ore; the money realized was used by Backus-Brooks Company and subsequently accounted for. When a corporation acquires a majority of the stock of another corporation, it assumes the obligation to manage the affairs of the controlled corporation for the benefit of all of the stockholders and not for its own aggrandizement: *Hunnewell* v. *New York Cent. etc. R. Co.,* 196 Fed. 543, 545. In 1903 the defendant Backus was president of the Columbia Company and one of its directors. It was his duty to conduct the Columbia Company's affairs with an eye single to the interests of the Columbia Company: *Young* v. *Columbia Land etc. Co.,* 53 Or. 438, 441 (99 Pac. 936, 101 Pac. 212, 133 Am. St. Rep. 844). The above transaction was a breach of trust.

26. From 1899 to the present time the funds of the Columbia Company have been used by the defendant Backus to finance his lumber company. No security has been furnished the Columbia Company and no corporate action has been taken authorizing these loans. The defendant Backus has not asked plaintiff's leave, but has done as he has seen fit and paid such interest as he elected to pay. Plaintiff knew of these loans and seems to have made no objection to them prior to the bringing of this suit. It does not follow that he is required to permit this method of doing business to continue. In July, 1915, the indebtedness of Backus-Brooks Company to the Columbia Company was $67,560.20. This sum should be returned to the treasury of the Columbia Company.

The evidence shows that on September 18, 1915, the Circuit Court passed an injunction restraining the defendant Richardson from removing the books and papers of the Columbia Company from the State of Oregon. The injunction was served upon him at Baker on the early evening of that day. Prior to the service of the injunction he had packed the records and correspondence into nine boxes and had lodged them with the American Express Company for carriage to Minneapolis. At the time when the injunction was served upon him the shipment was at Baker, as he well knew, and the express company would have returned it to him on compliance with its regulations. He did nothing to stop the shipment, nor did he report the situation to the court or to opposing counsel.

In the trial of the issues involved in this case the minute-book of the Columbia Company was an important piece of evidence. The defendants were notified to produce it and failed to do so. The defendant Backus undertook to account for its absence by testi-

fying to some incident in 1907 when some records of Backus-Brooks Company were lost. Thereafter the defendant Brooks went on the stand and testified that he had seen the book in the custody of Backus-Brooks Company subsequent to the bringing of this suit. He further testified on cross-examination that at the time when he saw the minute-book the defendant Richardson was asking for all the records and papers which could throw any light upon this controversy. Plaintiff proved on rebuttal that the defendant Richardson had admitted when he was at Baker in September, 1915, that the minute-book was in his, Richardson's, possession. Richardson does not deny this testimony. He conducted the examination of Backus and Brooks in chief and drew out from the latter that a diligent search for the minute-book had been made in the effects of Backus-Brooks Company without avail immediately prior to the taking of the testimony.

The conclusion is inevitable that the defendant Richardson has possession of the minute-book, that he has willfully suppressed it and that he has conspired with the defendants Backus and Brooks to deceive the court as to its whereabouts.

Prior to the trial of this cause, plaintiff sent his father-in-law, Mr. Luther Perkins, from Coffeyville, Kansas, to Minneapolis to make inspection of the books of the Columbia Company. Mr. Perkins took with him written authority from plaintiff which was exhibited to the defendants. The inspection requested was the right of plaintiff under the express provisions of Section 6694, L. O. L. The inspection was denied with a discourtesy which is aggravated by the circumstance that Mr. Perkins was seventy-two years of age.

Immediately prior to the bringing of this suit plaintiff drew the sum of $14,756.83 from the funds of the

Columbia Company on deposit with the First National
Bank of Baker, put this in the form of certificates of
deposit and left the certificates in the registry of the
Circuit Court to abide the determination of this suit.
The defendant Backus was promptly notified of plain-
tiff's action in this regard.   Was plaintiff justified in
so doing, and what disposition should be made of this
fund?   Much that we have said in this opinion has
looked to the answer to these questions.

27–29. Plaintiff was not guilty of embezzlement and
the charge of embezzlement comes with a bad grace
from these defendants.   We think that plaintiff mistook
his remedy.   He should have applied for a receivership
and on the qualification of the receiver the fund should
have been paid to him.   The case is free from embar-
rassment in two respects which often stay the hands
of a court in appointing receivers.   There are no in-
nocent stockholders whose rights may be prejudiced;
Backus-Brooks Company and plaintiff are the only
parties beneficially interested in the Columbia Com-
pany.   The court is not taking over a going business;
the record shows that the mine is closed down.   The
case is one where the control of the corporation is
vested in a hard man who has been guilty of several
breaches of trust and of much defiance of the law.
The corporation has not held annual meetings for the
election of directors, as required by Section 6693,
L. O. L.   It has not kept its books in Oregon avail-
able for inspection by persons interested, as required
by Section 6694, L. O. L.   It denied an application for
such inspection by a stockholder who sent his repre-
sentative to Minnesota for such purpose.   Although
Section 6689, L. O. L., requires that a majority of the
directors shall be residents of this state, plaintiff is
the only Oregonian who has been a director since 1899

and the defendant Backus undertook to remove him immediately prior to the bringing of this suit. While plaintiff is in no position to require the defendants to restore to the treasury the moneys lost through the Midland Mining and Milling Company and the Northern Mining and Trading Company, the making of these investments is material as characterizing the management of the Columbia Company. The defendant Backus is a man of ability, intelligence and wide business experience. He knew the impropriety of investing the funds of an Oregon corporation in speculative mining ventures in Colorado and Northwestern Alaska. The defendant Backus is acting under the advice of the defendant Richardson, an attorney whose ethical principles leave much to be desired. We think the fears of plaintiff were well founded. If the fund in the registry of the court had been left on deposit in the Baker bank it would have been withdrawn from the jurisdiction and from the treasury of the corporation. In the absence of judicial action we doubt whether this fund or the $67,560.20 would ever be repaid to the Columbia Company. If paid at all, these moneys would be paid when it was convenient to Backus-Brooks Company to make settlement and not when the Columbia Company needed the funds. On proper allegations plaintiff is entitled to a receivership over the Columbia Company. The certificates of deposit in the registry of the court should be indorsed by plaintiff. If a receiver is appointed within thirty days from the entry of the mandate in this cause, or such further time as may be allowed by the Circuit Court, the certificates should be delivered to him; if no receiver is appointed within the allotted time the certificates should be delivered to the Columbia Company.

30. If plaintiff shall elect to amend his complaint and apply for a receivership, he will be proceeding in his own right and not in the right of the Columbia Company. The right of visitation over this Oregon corporation is vested in the courts of Oregon and any stockholder proceeding in his own right may invoke it. His pleading in such case will be his own complaint against the corporation and not the corporation's complaint against its unfaithful officers. The relief to which plaintiff is entitled can be given him most properly through a receivership.

31, 32. The defendants, Backus, Brooks, Horr and Backus-Brooks Co., having appeared generally for the first time when the decree was entered, should be permitted to answer if they so elect and to offer any additional proof which they may have. The record indicates that they have made their defense in the name of the Columbia Company and that they will probably have nothing further to offer. A mandatory injunction should issue requiring the Columbia Company to return its records to this state and to keep them here for inspection, as required by Section 6694, L. O. L. If the defendants shall fail to make restitution of the moneys taken from the Columbia Company's treasury, the receiver should be authorized to sue for their recovery. By seizure of the majority stock in the corporation the receiver can probably find a remedy in the Oregon courts. If not, the Minnesota courts will probably entertain his suit: *Comstock* v. *Frederickson,* 51 Minn. 350 (53 N. W. 713). Plaintiff is entitled, if he so elects, to have the receiver investigate the properties of Midland Mining and Milling Company and Northern Mining and Trading Company and to advise the court with reference thereto. On proper allegations, after the funds of the Columbia Company have been recov-

ered, the court may determine whether the circumstances entitle plaintiff to a distribution of these funds or any part of them by a dividend.

The disposition of the fund in the registry of the court herein directed can be set up by way of defense to the action at law brought by the Columbia Company against the First National Bank, and an injunction restraining that litigation is unnecessary.

The equities being with plaintiff, he should recover his costs in both courts from the Columbia Company.

The decree is therefore reversed and the cause remanded with directions to sustain the demurrer to the amended complaint with leave to plaintiff to amend, further proceedings to accord with this opinion.

REVERSED AND REMANDED.

MR. JUSTICE BEAN concurs in the result of this opinion.

Denied October 16, 1917.

PETITION FOR REHEARING.

(167 Pac. 1167.)

On petition for rehearing. Petition denied.

*Mr. James H. Nichols, Messrs. Smith & Smith,* and *Mr. John L. Rand,* for the petition.

*Mr. Harris Richardson* and *Mr. Morton D. Clifford, contra.*

In Banc. MR. JUSTICE McCAMANT delivered the opinion of the court.

As requested by plaintiff's petition for a rehearing, we have read again plaintiff's briefs. We have also

reread large portions of the testimony and many of the exhibits. We have re-examined the amended complaint on which the case was tried and have tested it by the rule laid down in *Olds* v. *Cary,* 13 Or. 362 (10 Pac. 786), and *Oregon & California R. R. Co.* v. *Jackson County,* 38 Or. 589, 597 (64 Pac. 307, 65 Pac. 369). This pleading is fatally defective even under the liberal rule of construction prescribed by these authorities. The case is not one of a defective statement of a good cause of suit, but of a failure to state a cause of suit. As pointed out in the first opinion, the amended complaint omits a number of essential allegations.

33, 34. It is contended that the Columbia Company is in no position to raise the questions of laches and the statute of limitations. If the suit is to be treated as one brought in the right of the Columbia Company to recover for it moneys abstracted from its treasury, this contention is sound. These defenses can be waived and they are deemed waived unless asserted by the litigant entitled to assert them: *Davis* v. *Davis,* 20 Or. 78, 84 (25 Pac. 140); *Creason* v. *Douglas County, post,* p. 159 (167 Pac. 796). The parties entitled to assert or waive these defenses, in the case supposed, would be the defendant Backus and the others charged with the frauds relied on.

In his petition for a rehearing plaintiff repudiates the suggestion that this suit is brought in the right of the Columbia Company. He construes his suit as an equitable demand on the corporation for his share of the fund which should have been distributed as a dividend. In this view of the case the Columbia Company is the adverse party and is entitled at its election to insist on its defenses of laches and the statute of limitations.

35. The amended complaint wholly fails to state facts showing that plaintiff is entitled to declare his own dividend or to have the court require the corporation so to do. The authority chiefly relied on is *Fougeray v. Cord,* 50 N. J. Eq. 185 (24 Atl. 499). This was a suit brought by a minority stockholder in the right of a corporation. He showed that its assets consisted wholly of profits in which he was entitled to participate. It clearly appeared that the failure to declare dividends was due to the fraudulent design of the directors to deprive plaintiff of his share of the profits. The purposes for which the corporation was organized had been for the most part subserved and the defendants had transferred its assets fraudulently to a new corporation in whose name they were transacting business. The assets consisted of town lots, bills receivable and liquid securities, all of which were readily divisible. Plaintiff secured personal service on the defendants and the decree provided for a receiver who should divide the assets equally among the stockholders. It affirmatively appeared that there were no creditors and that the corporation no longer required any capital.

In the amended complaint in the instant case it does not appear that the corporate enterprise has been subserved or abandoned; there are no allegations from which the capital requirements of the company can be inferred and plaintiff does not show that the directors are abusing their discretion in withholding dividends. The rule of law applicable is correctly stated in 4 Thompson on Corporations (2 ed.), Section 4509:

"As a general rule the officers of a corporation are the sole judges of the propriety of declaring dividends, but when directors use their powers illegally, wantonly or oppressively, a court of equity, at the instance of a minority stockholder, will interfere to prevent such

misconduct. Thus a minority stockholder may compel the declaration of dividends where he clearly shows that the directors are guilty of fraud or bad faith in accumulating a large surplus and refusing to pay dividends.''

The rule is also illustrated by the following cases: *Hiscock* v. *Lacy,* 9 Misc. Rep. 578 (30 N. Y. Supp. 860, 872, 873); *Boardman* v. *Lake Shore etc. Ry. Co.,* 84 N. Y. 157; *Morey* v. *Fish Bros. Wagon Co.,* 108 Wis. 520, 529 (84 N. W. 862). The first of these cases is valuable as showing the care which should be exercised in this class of litigation. The record showed a conspiracy to prevent the declaration of a dividend by absorbing profits and by concealing the extent of the assets through fraudulent charges on the books. The court carefully investigated the financial condition of the corporation and conservatively determined the fund which plaintiffs were entitled to have distributed in a dividend. By amendment of his pleadings and by further proof plaintiff may bring himself within the operation of these authorities which he cites, but in the present state of the record neither his allegations nor his proofs entitle him to relief in the form of dividends.

36. Plaintiff asks us to disregard what he calls ''the corporate fiction'' and cites 2 Cook on Corporations (5 ed.), § 663; *First National Bank* v. *Trebein Co.,* 59 Ohio St. 316 (52 N. E. 834), and *Bennett* v. *Minott,* 28 Or. 339, 347 (39 Pac. 997, 44 Pac. 288). These authorities hold that where a corporation is organized for a fraudulent or unlawful purpose and where the rights of innocent parties are not involved, equity will disregard the corporate fiction. The Ohio and Oregon cases had to do with the organization of corporations by insolvent debtors who transferred assets to the corporations in fraud of their creditors.

The Ohio court treated the fraudulent conveyances as an assignment for the benefit of creditors as required by an Ohio statute. This court treated the fraudulent conveyance as void at the instance of creditors of the grantor and subjected the property to the payment of the grantor's debts.

The Columbia Company was organized for a lawful purpose. From July, 1897, to September, 1915, it was engaged in the conduct of a lawful business. Plaintiff participated in its organization and during all those years served it as director and salaried employee. He made reports from year to year on behalf of the corporation to the corporation commissioner. In the ninth paragraph of his amended complaint plaintiff alleges the corporate existence of the Columbia Company; he sues as the owner of seventy-five shares of its capital stock. Plaintiff has received considerable sums of money as dividends on his stock. He is in no position to contend that this corporation is a fiction nor can this court so hold.

37, 38. Plaintiff finds fault with our holding that his attempted service by publication was ineffectual. It was not intended by the former opinion to announce the rule that there can be no service by publication without a prior attachment on which to base it. The seizure or control of the *res* which will justify such substituted service may be by bill in equity: *Hawkins* v. *Doe,* 60 Or. 437, 439, 440 (119 Pac. 754, Ann. Cas. 1914A, 765); *State* v. *First National Bank,* 61 Or. 551, 555 (123 Pac. 712, Ann. Cas. 1914B, 153). But all the authorities hold that such service cannot be made unless the court, at the time when the substituted service is invoked, has possession of some property belonging to the defendant so to be served. If this were a suit to establish and foreclose a lien on the majority stock of the Columbia

Company and Backus-Brooks Co., the Maine corporation which beneficially owns the majority stock, were a party to the suit, a service by publication could be had on said defendant, and if it failed to appear a decree with reference to the stock could be passed: *Jellenik* v. *Huron Copper Mining Co.,* 177 U. S. 1 (44 L. Ed. 647, 20 Sup. Ct. Rep. 559, 563). But the mine and the fund of $14,756.83 paid into court were the property of the Columbia Company. Neither at law nor in equity did they belong to the defendants on whom service by publication was undertaken to be had. Such attempted service was ineffectual and nugatory.

39. It is asserted in plaintiff's petition that when this suit was brought there was no ground for the appointment of a receiver. We have no disposition to force a receivership on these parties unless plaintiff elects to ask for it, but for the sake of clarifying our previous opinion we answer the suggestion of plaintiff. We are cited to a line of authority to the effect that equity has no jurisdiction to dissolve a corporation unless such jurisdiction is conferred by statute and that a receivership which would be equivalent to a dissolution will not be granted. The receivership suggested in our previous opinion would not dissolve the Columbia Company. It is within the general powers of a court of equity to grant a receivership over a corporation where through such receivership the relief of a minority stockholder can be best worked out: Smith on Receiverships, § 225c, p. 359; 2 Machen on Modern Law of Corporations, § 1161, p. 958; *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, 112 (53 N. W. 218, 17 L. R. A. 412); *State* v. *Second Judicial District Court,* 15 Mont. 324, 333–339 (39 Pac. 316, 48 Am. St. Rep. 682, 27 L. R. A. 392). The right is to be exercised sparingly and with great caution, to the end that the innocent be not made to suffer with or

for the guilty: *Columbia Nat. Sand Dredging Co.* v. *Washed Bar etc. Co.*, 136 Fed. 710, 712; *Bauer* v. *Haggerty*, 42 Wash. 313 (84 Pac. 871); *Ponca Mill Co.* v. *Mikesell*, 55 Neb. 98, 101 (75 N. W. 46). But where there are no innocent stockholders or creditors liable to injury from the appointment and where the rights of a minority stockholder victimized by the frauds of the majority can best be secured to him through a receivership, the relief will be granted; *Hampton* v. *Buchanan*, 51 Wash. 155, 163 (98 Pac. 374); *Fougeray* v. *Cord*, 50 N. J. Eq. 185, 201 (24 Atl. 499). Section 1108, L. O. L., does not divest this jurisdiction inherent in courts of equity; the office of the statute is not to abridge, but to enlarge this jurisdiction.

40. Plaintiff's petition presses upon us with much earnestness the contention that we are in error in the construction placed on the contract by which plaintiff acquired his interest in the mine and his stock in the Columbia Company. The contract in question was executed January 7, 1897, prior to the incorporation of the Columbia Company and at a time when only a small part of the purchase price of the mine had been paid. The dispute on this branch of the case has to do with plaintiff's contention that E. W. Backus Lumber Company was obligated to pay to the vendors the balance of the purchase price and that the defendants were guilty of a misappropriation of the funds of the Columbia Company in using $60,000 of them with interest in the payment of the balance of this purchase price. The agreement is as follows:

"Memorandum of agreement made and entered into by and between the E. W. Backus Lumber Company party of the first part and Frank S. Baillie party of the second part both of Minneapolis Hennepin County, Minnesota to wit:

"Now whereas the said first party is the owner of the property known as the 'Columbia Mine' as is shown by a certain lease and deed in escrow, made and executed on the seventeenth of August 1896 a copy of which is on file in the office of the register of deeds of Baker County Oregon made by Henry Cable Irwin Cable and Marion Cable vendors all of Baker County Oregon and R. C. Leavitt of Minneapolis Hennepin County Minnesota purchaser in behalf of the said E. W. Backus Lumber Company of which he is its Vice President. All of the above property named in the above deed and lease and all other property acquired since that date by Frank S. Baillie or any other persons now belongs to this property and is all jointly known hereafter for the sake of convenience as the 'Columbia Mine.'

"And whereas it is agreed that the said Baillie shall enter at once into the employ of the said first party hereto as active manager of the 'Columbia Mine' and to so remain as long as such employment is mutually satisfactory and for such services he shall receive a salary of $100 per month and all his expenses while in service together with his railroad fare and travelling expenses including four or six trips to Minneapolis from the Mine per annum if he should find it necessary or convenient and for the two and one half months services already rendered the sum of $115 per month and expenses. And as a further consideration should his services prove mutually satisfactory it is hereby agreed that said Baillie shall have the privilege of purchasing a five per cent interest in the *equity now owned by said first party in* said 'Columbia Mine' at the agreed price of $5,000 on the following terms to wit: the sum of $1,000 in cash the receipt of which is hereby acknowledged and the remaining sum of $4,000 shall bear interest at the rate of 8% per annum and shall be paid at the convenience of said Baillie but within a period of five years from this date, provided however that no dividend or profits from said 'Columbia Mine' shall be paid to said Baillie until said five per cent interest shall have been paid in full either out of his share of profits or otherwise. It is further agreed that should this

property be incorporated and the stock of same issued the said Baillie shall have the privilege of having his stock issued and giving a note for balance of his purchase price and attaching to same the stock to be allotted to him amounting to five per cent as collateral for the payment of said note and it is also further agreed that should the said Baillie sever his active connection with this company within five years from date either on account of a dissatisfaction or for any other reason then in that case the said first party in consideration of one dollar in hand paid receipt of which is hereby acknowledged shall have the privilege of purchasing back the aforesaid five per cent interest whether the same had been fully paid for or not for the sum actually paid by the said Baillie for the same together with 8% interest from the dates of the payments made by him.

"In consideration of all the above it is also agreed by the parties hereto that the said Baillie shall give to first party the benefit of his entire time and ability during the time of his connection with the 'Columbia Mine.'"

The words in italics, "*equity now owned by said first party in,*" were not in the first draft of the agreement. They were interlined therein by the defendant Backus. When the first draft was so amended, it was copied by plaintiff in his own handwriting and signed as above. Some six months later, on July 30, 1897, the Columbia Company was incorporated and the Leavitt option or lease was assigned to it in payment for the stock subscribed. Cable Brothers, the vendors, were induced to give a deed to the Columbia Company and this corporation executed to them on August 5, 1897, a mortgage in the sum of $60,000 covering the mine. This mortgage was subsequently paid with Columbia Company funds.

The evidence shows that plaintiff was familiar with these transactions at all times and that he made no

objection to them until shortly before the bringing of this suit in 1915. If the contract had been signed in the form in which it was originally drawn, plaintiff's contention would probably be sound. There might possibly be some doubt as to the construction of the agreement in that event because the ownership of the E. W. Backus Lumber Company is referred to the contract with Cable Brothers and that contract shows the ownership to be the equitable title of a vendee in a contract of sale, which is, of course, subject to the payment of the remainder of the purchase price. But the contract as finally signed is free from ambiguity. Plaintiff's agreement was to pay $5,000 for a five per cent interest in the equity in the property owned January 7, 1897, by the E. W. Backus Lumber Company. Such was the practical construction given the contract by the parties. The circumstances to which plaintiff directs our attention show that a hard bargain was driven with plaintiff, but they are not effectual to modify the plain meaning of the contract actually executed.

41. It is contended that the entries in the books with reference to the accounts of the Midland Mining and Milling Company and the Northern Mining and Trading Company misled plaintiff and that therefore he should not be held to have acquiesced in these diversions of funds. The contention is that the entries charged plaintiff only with notice of loans, while the fact was that investments were made with the funds of the Columbia Company. As regards the Midland Company, the contention cannot be upheld. The account on the books of the Columbia Company recites the purchase of stock from different parties and the levy of assessments on this stock. The correspondence to which plaintiff was a party discusses the wisdom of patenting two of the mining claims and there was an

effort to sell the property in which plaintiff participated. The expense of plaintiff on a side trip to Denver for the purpose of selling this property was paid by the Columbia Company. Plaintiff must have known for nearly fifteen years of this investment and the record shows no protest on his part until 1915 immediately prior to the bringing of this suit.

The record is less clear in the case of the Northern Mining and Trading Company. The bookkeeping is equivocal, but most of the entries would suggest to a reasonable man that money of the Columbia Company had been loaned to the Northern Company. Plaintiff shows that the notes held by the Columbia Company were executed without authority from the Northern Company and represented no debt owing by it. There is evidence, however, that plaintiff understood that the Columbia Company was interested in the Nome properties of the Northern Company in some other sense than as a creditor. Several witnesses for the defendants testify explicitly to notice brought home to plaintiff and they are corroborated by letters written by plaintiff in which he speaks of these Nome mines as "our properties." Plaintiff wholly fails to show that the notes of the Northern Company would have more value than its stock. The evidence makes out a clear case of acquiescence by plaintiff for fifteen years in the diversion of these funds either by way of loan or investment and we think that plaintiff can have no relief on this score.

Charles A. Ferrin, a witness for the defendants, testifies that he remitted to the defendant Backus from the operation of these Nome properties $5,000 in 1912, $4,000 in 1913 and $3,000 in 1915. The evidence indicates that only a small part of these sums has been accounted for by the defendant Backus, but the obligation

to account was due primarily to the Northern Mining and Trading Company. We do not see how relief can be granted plaintiff in this suit on this ground, but the decree in this suit will not stand in the way of suitable relief in a new proceeding.

The Columbia Company has filed a petition for rehearing which asks a modification of the previous opinion on the subject of costs. Our conclusions on this subject are predicated on the assumption that plaintiff will amend and in case he fails to do so in such time as may be allowed by the lower court, the Columbia Company may apply to this court for a recall of the mandate and its modification in the matter of costs.

BOTH PETITIONS FOR REHEARING ARE DENIED.