WATSON v. UNITED STATES SUGAR REFINERY et al.

(Circuit Court of Appeals, Seventh Circuit. July 9, 1895.)

No. 223.

1. EQUITY PLEADING—MULTIFARIOUSNESS.
    A bill alleging that complainant had been induced, by false representations of certain individual stockholders and officers of a corporation, to purchase stock therein, which has proved worthless, and also alleging numerous grounds upon which a dissolution of the corporation and an accounting are sought, is multifarious in joining a cause of action against the individual defendants, for deceit, with one against the corporation for dissolution and accounting.

2. CORPORATIONS.
    A bill by a stockholder, seeking dissolution of a corporation and accounting, alleged that business had been suspended, "among other things," because of the worthlessness of a patent under which it had been carried on, but without stating that that was the controlling reason; that the officers were misapplying the funds, but without stating that any effort had been made to have the corporation bring suit; that the officers had tampered with the books, but without stating in what manner; that certain assets had not been entered in the books, but without charging concealment or intentional wrong. *Held*, that the allegations were too general and indefinite to justify granting relief.

3. EQUITY PRACTICE—PARTIES.
    Where a bill for dissolution of a corporation and accounting seeks to have full payment made to the complaining stockholder for his investment before any payment to the transferees of certain other stockholders, such transferees are necessary parties.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Henry M. Wolf, for appellant.

Homer Cooke, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. This suit was brought by the appellant, William H. Watson, a citizen of New York, against the appellees, the United States Sugar Refinery, a corporation, and Thomas A. Jebb and William T. Jebb, citizens of Illinois. Error is assigned upon the action of the circuit court in sustaining the demurrers of the respondents to the amended and supplemental bill, and in dismissing the cause "for want of jurisdiction." The opinion of the court, which is in the record, shows that the demurrers were sustained upon each of the grounds alleged, namely,—that the complainant had not made a case entitling him to a discovery or other relief; that the bill was multifarious, exhibiting against the corporation and against the defendants Jebb several and distinct matters; and that there were other stockholders of the company who were necessary parties to the action. The averments of the original bill, which, like the supplemental bill, purports to be for the benefit of the complainant and other stockholders of the United States Sugar Refinery who may choose to join in the suit as parties complainant, are, in substance, that the United States Sugar Refinery, incorporated under the laws of Illinois about the 24th day of December, 1889, with a capital stock of $500,000, in shares of $100, was organ-

ized for the purpose of manufacturing rose malt, grape sugar, glucose, starch, syrups, feeds, corn meal, corn flour, and other products of corn, and that William T. Jebb is a stockholder, director, and president of the company; that the incorporators, original subscribers to the stock, and directors of the company for the first year, were Henry C. Hutchinson, Henry B. W. Browning, and J. A. Holzbauer, Browning having subscribed for 4,998 shares, and the others each for one share, but that the Jebbs, father and son, who were owners of a majority of the capital stock, and were then preparing to engage in the business of manufacturing glucose or grape sugar from maize, under certain letters patent for a process of making the same issued to William T. Jebb, as assignee of John C. Schuman, were practically the sole executive officers and managers of the company. From this point, the bill proceeds to show in detail and at great length that, by false representations in respect to the validity and value of their patents and the process covered thereby, the Messrs. Jebb procured the complainant in March, 1890, to purchase and pay for 50 shares of the capital stock of the company, of which shares, it is alleged, he ever since has been and is the legal owner and holder. It is further averred that the company completed and begun to operate its factory in May, 1890, but before the end of nine months, "by reason, among other things, of the utter worthlessness of said patents and processes," the works were shut down, and since February, 1891, have stood idle, and that for more than two and one-half years the company has wholly ceased doing business; that no stockholders' meeting has been held for more than two years; that, though often requested, no accounting has been rendered, and no report made by the officers of the company; that William T. Jebb, the president, and other officers, acting under his directions, have refused to allow stockholders or their agents to examine the books of the company, and that there is now pending a suit in the circuit court of Lake county, Ill., to compel the officers to permit a stockholder to examine the books. It is also alleged that the officers have illegally employed the assets of the company in speculations in real estate, and have squandered, given away, and sold a considerable part of the assets to parties known to be pecuniarily irresponsible; and, upon information and belief, it is averred that the treasury of the company is without money or funds of any kind, and is in debt to the amount of about $20,000, to recover which suits are pending on appeal, taken by the company, to the United States circuit court of appeals for the Seventh circuit; that the company is insolvent; that the Jebbs are without funds, and have put their stock in the names of their wives; that the plant of the company, its real estate and buildings, are worth more than $5,000, and in the neighborhood of $300,000; that the purposes of the company cannot be attained; that any use to which the property might now be put would involve, necessarily, a departure from the original corporate design, and that the stockholders ought to be protected against further loss or diminution of the capital stock or assets of the company, which cannot be done unless the company is wound up and dissolved; that this suit

is not a collusive one, designed to confer jurisdiction which the court otherwise would not have. This is the substance of the original bill, the prayer of which is, that the defendants be required to answer, but not under oath; that a receiver be appointed of the assets of the company; that the assets be sold, and the proceeds applied to the payment of debts, and that the remainder be distributed, giving to the complainant and other stockholders similarly situated the full amount of their investments, before paying anything to the Jebbs or to the transferees of their stock; that the company be dissolved, and that meanwhile the defendants Jebb be restrained from selling, incumbering, or interfering with the assets of the company or transferring their stock therein; and that other proper relief be given. The supplemental bill, reaffirming the original averments, alleges that, since the filing of the original bill, the complainant has been informed and believes, and therefore avers, that the total available cash assets of the company are only about $400, and are insufficient to continue the employment of suitable watchmen to protect the plant; that, during the period of operation before February, 1891, the company lost large sums, consuming its available cash capital; that for the last year or more the expenses of protecting the property have been paid out of funds taken by William T. Jebb from the assets of the United States Starch Works, a corporation owning adjoining property, of which said Jebb had been treasurer and manager, but that, by reason of his recent removal from control, that source of supply has been cut off; that William T. Jebb, the president, has tampered with and manipulated the books, papers, and accounts of the company, and has rewritten or caused to be rewritten one of the main books of account, falsifying the entries therein; that 1,000 shares of the stock of United States Starch Works which were issued to William P. Kennard, the secretary and treasurer of the United States Sugar Refinery, in trust for the latter company, and of which 930 shares have since been transferred out of the name of Kennard into the name of George R. Teller, and 50 shares into the name of Henry B. W. Browning, have not been entered upon the books of the company as an asset thereof, and that said Teller's note for about $93,000, given to William T. Jebb, in trust for the company, in consideration for the transfer mentioned, has not been turned over to the treasurer, nor any entry thereof made upon the books of account of the company; that, since the filing of the original bill, as complainant is informed, a pretended annual meeting of the company was held, about the 21st day of December, instant, of which neither the complainant nor any other stockholder in like interest received any notice or had any knowledge; that he is informed that certain persons, since that meeting, have visited and examined the works and plant, with a view to purchasing the same; and he charges that, unless restrained, the Messrs. Jebb, as officers in control, will sell the property, "and appropriate such portion of the proceeds of such sale as they may be able to do." The prayer, in so far as it differs from the prayer of the original bill, is that the respondents be prohibited from selling, leasing, mortgaging, or

conveying any of the property of the company until authorized thereto by the stockholders, at a meeting duly called and held.

If the appellant was induced by false representations to make a losing investment in the corporate stock, his remedy is at law against those who deceived him, and not against the corporation. It may be, as was suggested in West v. Huiskamp, 11 C. C. A. 401, 63 Fed. 749, 755, that one who is induced to join others in the organization of a corporation, by false representations which affect the solvency of the enterprise from the beginning, may be entitled, upon discovery of the fraud, to a decree in equity for the winding up of the affairs of the company; but that is not the case presented. The appellant was not an original corporator, but simply the purchaser and assignee of shares in an organization already complete. Unless, therefore, the averments in respect to the deceit practiced upon him be rejected as meaningless or superfluous, the 'bill is clearly multifarious, not only because it joins distinct and independent matters, but because it seeks to enforce different remedies against distinct parties not jointly liable or interested. In other respects, moreover, the allegations of the bill are too general and indefinite, or otherwise defective, to justify relief in a suit by a stockholder. The appellant, owning but 1 per cent. of the stock of the company, professes to sue for the benefit of himself and other stockholders in like situation, but fails to show or to raise a fair inference that there are others who desire or who would be benefited by the relief sought. The bill may, therefore, be regarded as if brought in his own interest alone. Without repeating in detail the different allegations, we note some of the particulars in which they are defective: The works of the company, it is stated, after being kept in operation at a loss for nine months, were shut down, for the reason, "among other things," that the patents and patent processes which they had proposed to use had proved worthless; but whether that was the main or controlling reason is not explained, and, as against the pleader, the contrary is inferable. No stockholders' meeting has been held for more than two years, and no report of officers has been made; but that any interest had suffered or was likely to suffer on that account is not shown, nor affirmed; and the supplemental bill admits a recent meeting of the board,—held, it is alleged, without notice, but it may have been at the time fixed by a rule or by-law of the company, of which, without formal notice, stockholders were bound to take cognizance. Stockholders and their agents, it is charged, were not permitted to examine the books of the company; but under what circumstances, and for what reason, the examination was sought and refused, is not disclosed. If wrong was done in that respect, it is to be presumed that it will be righted in the suit brought for that purpose in the state court. It is alleged that the assets of the company have been employed in speculations in real estate; but, besides the total failure to allege tangible particulars, the remedy should be sought in the name of the corporation. The rule is well settled that a stockholder cannot maintain a suit for a wrong to the corporate body without showing either an effort to set the corporation in motion to redress the wrong, an application

made to the board of directors to that end, or that such effort or application would be useless. And this requirement is not satisfied by an allegation that the directors or a majority of them are acting in the interest or under the control of others who are charged with the fraud. Brewer v. Proprietors, 104 Mass. 378; Dodge v. Woolsey, 18 How. 331. While it is alleged that the Jebbs were practically the sole executive officers and managers of the company, it does not appear that Hutchinson, Browning, and Holzbauer, who were directors, were for any reason unable, or, with information of the facts, unwilling, to bring proper suits to correct the harm done, or to prevent that threatened. It is alleged that the company is without available cash capital, and without means to employ watchmen; but it is admitted that money for that purpose had been supplied from another source. Instead of being insolvent, it appears that the company, while indebted to the amount of $20,000, is owner, in addition to its plant, worth $300,000, of a promissory note for $93,000, the maker of which is presumably solvent and responsible. It is alleged that entries have not been made upon the books of the company of certain transfers of stock and of the Teller note; but it is not charged that the omission was intentional or wrongful, or that there had been any concealment of the nature of the transactions or of the company's interests therein. In what respect, and for what purpose, the entries were falsified in the book which is alleged to have been rewritten, is not shown, and whatever wrongs there may have been in that respect were, under the rule already stated, matters for complaint or suit by the company, and not by the appellant as a stockholder. If it be true, as asserted in the bill, that any use to which the property might now be put would involve a departure from the original design, then a sale of the property and a division of the proceeds between stockholders was the proper course, and no ground for an injunction is disclosed in the averment that the Messrs. Jebb, as officers in control, will make a sale "and appropriate such portion of the proceeds of such sale as they may be able to." This does not show a purpose to appropriate more than their just share; nor is it alleged that they are insolvent and irresponsible for what should come into their hands.

Even upon the appellant's own theory of the case, there is a lack of necessary parties. The prayer of the bill is that the property of the company be sold, and the proceeds, after payment of debts, given to the appellant and others in like situation, to the full amount of their investment, before payment of anything to the Jebbs or to their wives, to whom it is alleged they had transferred their shares of stock; but it is evident, on elementary principles, that such an order, if otherwise justifiable, could not be made in a case to which the legal holders of the shares were not parties.

Objection is made, in a supplemental brief, that the bill was dismissed without leave to amend, and that the proper practice, when a bill is dismissed without a consideration of its merits, is to decree a dismissal without prejudice. Durant v. Essex Co., 7 Wall. 107, 110; Kendig v. Dean, 97 U. S. 423, 426. The assignment of errors presents no such question. Besides, the first ground

of demurrer went to the merits of the bill, and the opinion of the court, as already stated, shows that all the grounds advanced were deemed good. The final order was that the bill be dismissed "for want of jurisdiction,"—meaning, doubtless, that a case of equitable cognizance was not shown. If it means that the merits were not decided, then the decree is equivalent to a dismissal without prejudice. In any view, we do not perceive that the decree upon this bill, which, as we agree with the circuit court in holding, presents no ground for relief, can be a bar to another bill which shall show different and good ground. Leave to amend, if desired, should have been asked at the time the decree was announced, or seasonably thereafter. Equity rule 35. The decree of the circuit court is affirmed.