Seymour **ABRAMS**, Individually, derivatively, on behalf of Mayflower Investors, Inc., a Delaware corporation, Plaintiffs,

v.

**MAYFLOWER INVESTORS, INC.,** a Delaware corporation, et al., Defendants.

No. 73 C 1962.

United States District Court, N. D. Illinois.

March 6, 1974.

**362**

⊜⌐187

William J. Harte, Kevin M. Forde, and James Chapman, Chicago, Ill., for plaintiffs.

William A. Cromartie, Jeffrey Kuta, Glen H. Kanwit, Stephen B. Bell, Hopkins, Sutter, Owen, Mulroy & Davis, Chicago, Ill., for Mayflower, its officers and directors.

Perry L. Fuller, William J. Holloway, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Scheer, Markman, B. Malmquist, S. Malmquist, McDonald and McCormick, Inc.

BAUER, District Judge.

This cause comes on the motion of certain defendants to dismiss or for transfer of venue to the United States District Court for the Middle District of Florida.

This is a derivative action on behalf of Mayflower Investors, Inc. ("Mayflower") to enforce a right of Mayflower which that corporation allegedly has failed to enforce and which the corporation may properly enforce. The named plaintiff, Seymour Abrams, is a citizen and resident of the State of Illinois and presently owns 3500 shares of Mayflower common stock and has been a shareholder of Mayflower at all times relevant to the instant complaint.

The defendant Mayflower is a corporation organized under the laws of the State of Delaware, which has its principal place of business in Naples, Florida. Defendants Joseph F. Pulte, Glenn L. Felner, Lawrence M. Scheer, Steven R. Malmquist, Raymond J. Markman, Richard J. Baker, David L. Smith, David R. McDonald, Charlane Malmquist, Bertel T. Malmquist, Olaf Knudsen, Allen B. McCombs, Leo D. Ovson, Benjamin E. Wolff, Harold J. Baker and others unknown were, at all times relevant to the instant complaint, directors and officers of Mayflower. The defendant Chicago City Bancorporation ("Chicago City") is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. Defendants Steven R. Malmquist, David R. McDonald, Gavin Weir, John B. Diezel, Philip Lazzara, Allen L. Dougherty, David L. Smith, Charlane Malmquist and others unknown were, at all times relevant to the instant complaint, directors and officers of Chicago City. Defendant McCormick & Co., Inc., ("McCormick") is a corporation organized under the laws of the State of Illinois and its principal place of business is in Chicago, Illinois.

The plaintiff in the instant action seeks to redress the alleged violations of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(a); Section 17 of the Securities Act of 1933, 15 U.S.C. §

77q(a); the rules and regulations of the Securities and Exchange Commission promulgated thereunder and common law principles. The jurisdiction of this Court is allegedly based on Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331. The amount in controversy exclusive of interest and costs allegedly exceeds $10,000. The thrust of the instant complaint is that the defendant directors of Mayflower, in violation of the federal securities laws and their fiduciary duties to the corporation, engaged in a scheme to deprive Mayflower of assets and divert those assets to themselves and/or to persons and corporations with which they were associated.

The plaintiff, in his complaint, alleges, *inter alia,* the following facts:

1. Plaintiff brings this action as a derivative action, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure on behalf of and for the benefit of Mayflower to enforce a right of Mayflower which the Corporation has failed to enforce and which the Corporation may properly enforce. This action is not a collusive one to confer jurisdiction on a Court of the United States which it would not otherwise have. Plaintiff fairly and adequately represents the interests of all other shareholders similarly situated in enforcing the rights of the Corporation. Plaintiff has not requested that Mayflower bring an action or take an action against the defendants to recover for and to correct the wrongs herein complained of for the reasons that:

a. a majority of the members of the present Board of Directors of Mayflower participated in, approved or were the beneficiaries of the wrongful acts and conduct of defendants and are themselves named as defendants herein;

b. the entire present Board of Directors of Mayflower for a consid-erable time has been fully aware of the wrongful acts and conduct herein alleged and has nevertheless failed to take action thereon; on the contrary, they have actively concealed and suppressed from plaintiff and the stockholders of Mayflower the true facts and the wrongs complained of;

c. the defendants who were the beneficiaries of the wrongful acts and conduct alleged herein have dominated and controlled Mayflower and have exercised such domination and control prior to and up to the date of the commencement of this action. Any action that might have been instituted by Mayflower against defendants would, therefore, have been controlled by persons friendly to defendants and could not be diligently and fairly prosecuted;

d. demand upon Mayflower to bring action to redress the wrongs alleged herein would, in practical effect, be a demand on the Board of Directors to institute suit against themselves and, therefore, is futile.

Plaintiff has not requested that the shareholders of Mayflower bring an action or take action against defendants for and to correct the wrongs herein complained of for the reason that, under the facts of this case, it is unnecessary and for the reason that the majority of the stock of Mayflower is owned and controlled by defendants and persons, corporations, and other entities who participated in the wrongs complained of and are friendly to the interests of defendants.

2. As of January 1, 1971, 100,000 shares of Chicago City which included all of the issued and outstanding shares of Chicago City were owned by Mayflower. From approximately January 1971 to the date of the instant complaint, defendants, directly and indirectly, engaged in a concerted scheme to

wrongfully deprive Mayflower of certain assets, namely, 100% of the common shares of Chicago City and other funds and assets of Mayflower and to wrongfully divert these assets to themselves and to persons, corporations and other entities with whom they were associated by making and causing to be made certain false and misleading statements and representations and omissions of material facts in violation of Section 17 of the Securities Act of 1977 [1933] and Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder.

3. On or about May 10, 1971 defendants caused to be offered and sold to themselves and to persons, corporations, and other entities with whom they were or are associated 70,000 common shares of Chicago City, the purpose of which was to wrongfully, illegally, and fraudulently divert said assets of Mayflower for their own personal interest, advantage and profit, and for the personal interest, advantage and profit of persons, corporations and other entities with whom they were or are associated, and failed to disclose and did conceal from plaintiff and other minority shareholders, among other things, the true nature and extent of any self-dealing on the part of defendants, both before and after the offer and sale of the said securities, and that the said securities were offered and sold for an amount substantially less than the value of said securities, in contravention of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder and Section 17 of the Securities Act of 1933. On or about November 12, 1971 defendants caused to be issued a prospectus and a token subscription offering of 53,000 common shares of Chicago City to some minority shareholders of Mayflower, the purpose of which was to wrongfully, illegally, and fraudulently misrepresent the true value of the shares of Chicago City and to wrongfully, illegally and fraudulently enable defendants to divert 30,000 of said shares owned by Mayflower for their own personal interest, advantage and profit, and for the personal advantage of and profit of persons, corporations and other entities with whom they were or are associated. Said defendants further failed to disclose to plaintiff and the minority shareholders and did conceal from them among other things, the true nature and extent of any self-dealing on the part of defendants, both before and after the offer and sale of the said securities and that the said securities were offered and to be sold for an amount substantially less than the value of said securities, in contravention of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder and Section 17 of the Securities Act of 1933. As a result of these actions the defendants, their agents, nominees and other persons, corporations, and entities associated with and controlled by them obtained control and ownership of 100% of the shares of Chicago City, to the substantial injury of Mayflower.

4. On or about January 5, 1973 defendants Joseph F. Pulte, Glenn L. Felner, Lawrence M. Scheer, Steven R. Malmquist, Raymond J. Markman, Richard J. Baker, and other defendants unknown caused to be disseminated a Proxy Statement for the annual meeting of shareholders of Mayflower to be held on February 2, 1973. The purpose of this meeting was to elect a board of nine directors for the ensuing year and to transact such other business as may properly be put before the

meeting. The Proxy Statement was disseminated by order of the Board of Directors of Mayflower, which included, among others, the aforesaid defendants, and was issued in violation of Section 10(b) and Section 14(a) of the Securities Exchange Act of 1934 and Rules 10b–5 and 142–9 thereunder and Section 17 of the Securities Act of 1933. The Proxy Statement was disseminated in violation of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and Rules 10b–5 and 14a–9 thereunder and Section 17 of the Securities Act of 1933 in the following respects, among others, by failing to disclose:

a. that the purpose of the said offer and sale of the 100,000 common shares of defendant Chicago City was to fraudulently, wrongfully and illegally deprive Mayflower of these assets in order to benefit defendants and persons, corporations, and other entities with whom they were and are associated;

b. that the value of the said shares of defendant Chicago City was substantially greater than the price paid by said defendants and persons, corporations, and other entities with whom they were and are associated; and

c. the full extent of self-dealing by the defendants.

As a result of the actions and self-dealing of defendants set forth above, Mayflower was wrongfully misled and defrauded, thereby wrongfully causing it to be denied the opportunity to purchase and acquire any common shares of Chicago City. Each of the defendants approved, authorized and acquiesced in the false and misleading statements and omissions set forth above and otherwise aided and abetted each other in the implementation of the wrongs complained of herein. These misrepresentations of material facts and omissions to state material facts, which facts were necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, constitute violations by the defendants, and each of them, of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and Rules 10b–4 and 142–9 thereunder and Section 17 of the Securities Act of 1933.

5. The scheme of the defendants to defraud Mayflower and its shareholders and dissipate, divert, loot and drain the assets of Mayflower, in violation of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and Rules 10b–5 and 14a–9 thereunder and Section 17 of the Securities Act of 1933 and the rules and regulations promulgated thereunder, as aforesaid, was implemented and carried out in the following ways and through the following transactions among others:

a. the offer and sale of 100% of the common shares of Chicago City for an amount substantially less than the value of said securities and which resulted in a loss to Mayflower;

b. the payment of underwriting compensation in the amount of $45,000 to the said McCormick of Chicago, Illinois, of which defendant Bertel T. Malmquist was a director, officer and principal shareholder and of which defendant Steven R. Malmquist was an officer and registered representative;

c. the issuance of 1,000 shares of Chicago City to the said McCormick;

d. the payment of a finder's fee in the amount of $150,000 to said McCormick in connection with the aforesaid offer and sale of 70,000 common shares of Chicago City;

e. the payment of expenses of the aforesaid subscription offer of 53,000 shares of Chicago City in an amount exceeding $57,000;

f. the payment of a finder's fee in the amount of $150,000 to said McCormick in connection with the obtaining of financing for Mayflower;

g. the sale, transfer, and disposal of various other assets of Mayflower, including land, accounts receivable, notes receivable and rights of Mayflower at less than full value and at a loss to Mayflower.

In conjunction with and pursuant to the aforesaid scheme of the defendants to defraud Mayflower and its shareholders and dissipate, divert, loot and drain the assets of Mayflower the defendants fraudulently omitted and concealed and misrepresented the material facts underlying and surrounding the transactions described in the aforesaid Prospectus and Proxy Statement and in other proxy statements, annual reports and other public utterances which defendants caused to be disseminated and which were disseminated by them during the time in issue.

6. By reason of the aforesaid misrepresentations, acts and transactions of defendants, upon which plaintiff relied, defendants committed direct violations of the common law and their fiduciary duties and obligations to Mayflower under the aforesaid sections of the Securities Act of 1933 and the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder. The defendants' wrongful conduct was intentional, deliberate, wilfull and wanton.

The defendants, Glenn L. Felner, Lawrence M. Scheer, Raymond J. Markman, Bertel T. Malmquist, Steven R. Malmquist, David R. McDonald, and Mc-Cormick, in support of their motion to dismiss, contend that:

1. There has been no appropriate demand under Rule 23.1 of the Federal Rules of Civil Procedure. A demand would not be futile.

2. Plaintiffs do not state a claim upon which relief can be granted under the 1934 Exchange Act, Section 10(b), 15 U.S.C. § 17(j) [78j(b)] or Rule 10b–5, 17 C.F.R. § 240.10b–5 promulgated thereunder.

3. Plaintiff has not stated a claim upon which relief can be granted under the 1933 Securities Act § 17(b), 15 U.S.C. § 17(q) [77q(b)].

The defendants, Gavin Weir, John B. Diezel, Philip Lazzara, Chicago City Bancorporation, Allen L. Dougherty have been granted by this Court leave to adopt this motion to dismiss.

The defendants, Mayflower Investors, Inc., Joseph F. Pulte, Richard J. Baker, and other officers and directors of Mayflower Investors, Inc., in support of their motion to dismiss or in the alternative for transfer of venue contend that:

1. This Court lacks jurisdiction over the subject matter of the action.

2. The complaint fails to state a claim upon which relief can be granted.

3. The action may not be maintained under Rule 23.1 of the Federal Rules of Civil Procedure.

4. The Northern District of Illinois is an improper venue for this action.

5. This Court lacks personal jurisdiction over the defendants captioned in the complaint as "other officers and directors of Mayflower Investors, Inc. and Chicago City Bancorporation, unknown".

It is the opinion of this Court that it lacks jurisdiction over the subject matter of the instant action given the present posture of the suit.

## THE PLAINTIFF HAS FAILED TO PROPERLY COMPLY WITH RULE 23.1 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Rule 23.1 of the Federal Rules of Civil Procedure requires that a disgruntled shareholder must show either that he exhausted all intracorporate means of redress or, alternatively, why such efforts would be futile. Rule 23.1 embodies the common law requirement that before a shareholder derivative action may proceed, demand must be made on the directors and, if necessary, the other shareholders so that the corporation itself may have the opportunity to institute the action.[1] Under Rule 23.1 such a demand is excused only if the complaint, which must be verified, alleges with particularity the reasons for not making the effort.

It is well settled that the question of whether a shareholder should be required to make a demand as a prerequisite to maintaining a derivative action is addressed to the sound discretion of the court, and ordinarily, the court determines this question on the basis of the allegations of the complaint. Fields v. Fidelity General Insurance Company, 454 F.2d 682 (7th Cir. 1971); DePinto v. Provident Security Life Insurance Co., 323 F.2d 826 (9th Cir. 1963), cert. denied, 376 U.S. 950, 84 S.Ct. 965, 11 L. Ed.2d 969 (1964). Courts have generally been lenient in declaring that the plaintiff was not required to make a demand where it was clear from the relevant pleadings that such a demand would be a useless act or an idle ceremony or completely futile. See e. g. Pioche Mines Consolidated, Inc. v. Dolman, 333 F.3d 257 (9th Cir. 1964), cert. denied, 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965); Cohen v. Industrial Finance Corporation, 44 F.Supp. 491 (S. D.N.Y.1942); Winkelman v. General Motors Corp., 44 F.Supp. 960 (S.D. N.Y.1942). However, courts have stubbornly refused to depart from the ritual of demand in some cases, despite the allegations of the plaintiff which state the utter absurdity of making the demand. For example, courts have held both that merely because a putative majority of the directors are alleged to be implicated in the fraud on the corporation, the necessity for a demand upon the entire board continues and that general averments of complicity on the part of the directors in the wrong against which relief is sought will not bring the plaintiff within the exception to the rule. See Watson v. United States Sugar Refinery, 68 F. 769 (7th Cir. 1895); Ziegler v. Lake St. El. Ry., 76 F. 662 (7th Cir. 1896). See also In re Kauffman Mutual Fund Actions, 479 F.2d 257 (1st Cir. 1973), cert. denied, 414 U.S. 857, 94 S. Ct. 161, 38 L.Ed.2d 107 (1973); Robison v. Caster, 356 F.2d 924 (7th Cir. 1966).

Paragraph 12 of the plaintiff's complaint alleges generally that a demand would be futile because the present Board of Directors is dominated by those whose conduct is the subject matter of the complaint.[2] It is important to

---

1. This Rule is the cumulation of three previous efforts to regulate the institution of derivative shareholders' actions in federal courts. In 1882 the United States Supreme Court, immediately after its decision in Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827 (1882), adopted Equity Rule 94 as an attempt to state in definite form the holding of that case. In 1912 the United States Supreme Court modified that rule slightly when it promulgated Equity Rule 27 which added the phrase "or the reasons for not making such effort". Equity Rule 27 applied only to "corporations". Former Rule 23(b), promulgated in 1937, made some verbal changes which enlarged its scope so that it applied to all associations, incorporated or unincorporated. Rule 23.1 substantially restates the principles of Rule 23(b).

2. Paragraph 12 of the complaint states, in relevant part:

"12. Plaintiff has not requested that Mayflower bring an action or take action against the defendants to recover for and to correct the wrongs herein complained of for the reasons that:

a. A majority of the members of the present Board of Directors of Mayflower

the proper assessment of the plaintiff's allegations to note that such allegations are not based on the personal knowledge of the plaintiff or any other person but rather are based on "the best of [plaintiff's] information" and are directly controverted by the affidavits submitted by certain defendants.

■ The affidavit of defendant Baker filed herein shows who was on the Board of Directors of Mayflower on August 1, 1973. The defendants, in their respective motions, represent that that affidavit and the affidavits of other directors clearly demonstrate that when this action was commenced and since October 1972 the majority of the directors (6 to 3) were independent, and never had any connection with the subject matter of this action.[3] The plaintiff has failed to effectively controvert these affidavits. It thus appears that the allegations contained in paragraph 12 are overly broad and conclusory and do not properly comply with the requirement of Rule 23.1 that the plaintiff present verified allegations of facts which justify the allegation that it would be futile to make the demand. Given the present posture of the instant action in light of the affidavits of certain defendant directors it would be extremely difficult to conclude that a demand made by the plaintiff on Mayflower would be a useless act or an idle ceremony or completely futile.

Further, in appraising the sufficiency of the allegation on this point the Court must take into account the fact that, for all that appears in the record, it would have been a very simple matter for the plaintiff to make a demand upon the directors. This could have been done, for example, by simply mailing a copy of the complaint to the Board of Directors with a letter advising them that, unless the Corporation enforced its right within a reasonable time, the plaintiff would undertake to do so on its behalf.

There is also the practical issue of whether the ends of justice and orderly procedure will be served better by enabling a minority stockholder, through the use of vague allegations such as in the instant complaint, to impose on the defendants and the Court the necessity of a long and complicated trial which must result in dismissal if the Court finds that the defendant Board of Directors was not in fact dominated and controlled by some allegedly errant defendant directors; or, on the other hand, whether those ends will be served better

---

participated in, approved or were the beneficiaries of the wrongful acts and conduct of defendants and are themselves named as defendants herein.

b. The entire present Board of Directors of Mayflower for a considerable time has been fully aware of the wrongful acts and conduct herein alleged and has nevertheless failed to take action thereon; on the contrary, they have actively concealed and suppressed from plaintiff and the stockholders of Mayflower the true facts of the wrongs complained of.

c. The defendants who were the beneficiaries of the wrongful acts and conduct alleged herein have dominated and controlled Mayflower and have exercised such domination and control prior to and up to the date of the commencement of this action. Any action that might have been instituted by Mayflower against defendants would, therefore, have been controlled by persons friendly to defendants and could not be diligently and fairly prosecuted.

d. Demand upon Mayflower to bring action to redress the wrongs alleged herein would, in practical effect, be a demand on under this section lacking as well. *See* the the Board of Directors to institute suit against themselves and, therefore, is futile."

3. These facts are evident from paragraphs 3 and 4 of the affidavits of defendant directors William H. Shields, Joseph F. Pulte, Thomas P. Hoolihan, Bernard Knippen, Robert Toggweiler and Reynold Berti, and from paragraphs 3 and 5 of the affidavits of defendant director Richard J. Baker. Such affidavits are properly submitted in connection with a motion to dismiss for failure to comply with Rule 23.1. See H. F. G. v. Pioneer Publishing Co., 7 F.R.D. 366 (N.D.Ill.1946).

by adherence to a rule which would require the plaintiff, before filing suit, to ascertain (by means of the simple procedure outlined above) whether the Corporation can be induced to bring the action.

■ It appears that the proper approach is that if there is any chance that the Corporation will agree to the request, it, rather than an individual shareholder, ought to be given the opportunity to sue. This approach is preferable for the following reasons: First, the corporate officers and directors will undoubtedly be in possession of more information that is necessary to frame the complaint properly and to pursue the action more efficiently. Second, the Corporation generally will have greater financial ability to prosecute the suit with those legal resources appropriate to the magnitude of the claim. Third, the directors and officers of the Corporation will have a fiduciary duty (with attendant legal liabilities) to the Corporation and all of its shareholders to act in their interests in the maintenance of the action, whereas an individual shareholder has no such obligation. If the plaintiff's proposed suit appears meritorious, this same fiduciary duty will obligate the directors to pay heed to the demand.

■ If the demand is to be excused merely because some but not a majority of the directors allegedly participated, the same could be said with respect to those who had failed to oppose or indeed, who, as new directors, had merely neglected to take action against their predecessors. If by plaintiff's merely alleging error, the directors are to be presumed incapable of exercising sound business judgment, Rule 23.1 would become virtually meaningless—a stockholder would be entitled to try the case on the merits to show that he had a right

to bring it. Such an approach would be contrary to the spirit and letter of Rule 23.1.

Rule 23.1 also requires that plaintiff fairly and adequately represent the interests of all shareholders similarly situated. In this action, this would be the shareholders of Mayflower who did not benefit from the sale of its wholly owned subsidiary. However, certain defendants contend that these shareholders are already adequately represented by a majority of the members of the Board of Directors, all of whom owe a fiduciary duty to the plaintiff and the other shareholders. If plaintiff could maintain this suit in the absence of a demand, the shareholders purportedly represented by plaintiff might be damaged, if only by the expense of the Corporation's involvement in a potentially long and difficult lawsuit.[4]

A large part of the complaint consists of conclusory allegations. Plaintiff, a shareholder, is not in a position to have much personal knowledge of the facts involved, nor does he have direct and immediate access to the books and records of the Corporation. In these circumstances the preferable course is for the directors to be given the first chance to bring the action so that it could be supervised by persons with a greater knowledge of the facts and easier access to information.

In the case of a stockholder's derivative suit, the cause of action does not belong to the stockholder; it belongs to the corporation. The wrong which the suit seeks to redress is one which the corporation has sustained. When a stockholder's derivative action is dismissed because of the failure of a stockholder to comply with Rule 23.1, it is not because the corporation has no cause of action but because the stockholder lacks

4. The issue of whether plaintiff could maintain this action following a demand on the Board of Directors and their refusal based upon a good faith, independent determination that it would not be in the Corporation's best interest to bring such a suit need not be decided at this time.

**370**

the standing to assert the cause of action on its behalf.

It is clear that the instant action should be dismissed because the plaintiff has failed to comply with the requirement in Rule 23.1 of making the proper demand on the Board of Directors or appropriately demonstrating why that demand would be futile.

Accordingly, it is hereby ordered that defendants' motions to dismiss are granted and the cause is dismissed without prejudice.